**FRED A. BECK COMPANY, INC.,**
**Appellant–Defendant Below,**

v.

**JOSEPH E. SEAGRAM & SONS, INC.,**
**Appellee–Plaintiff Below.**

No. 49A02–9101–CV–2 [1].

Court of Appeals of Indiana,
Third District.

Aug. 29, 1991.

Phillips A. Terry, Brian K. Peters, McHale, Cook & Welch, Indianapolis, for appellant-defendant.

[1]. This case was diverted to this office by order of the Chief Judge.

Donald E. Knebel, Dwight D. Lueck, Barnes & Thornburg, Indianapolis, for appellee-plaintiff.

STATON, Judge.

Fred A. Beck Company, Inc. ("Beck") appeals a grant of summary judgment in favor of Joseph E. Seagram & Sons, Inc. ("Seagram"). Beck presents us with the sole issue of whether Seagram's claim for the price of goods delivered to Beck was barred by a one-year contractual limitation period.

We reverse.

Seagram, a manufacturer of alcoholic beverages, and Beck, a wholesale distributor of alcoholic beverages, entered into a Distributorship Agreement ("Agreement") in August 1973. The agreement was renewed for two successive one-year periods; thereafter, the agreement was renewed on a monthly basis. In July 1987, Seagram terminated the agreement after giving Beck thirty days' notice.

During May, June and September, 1987, Seagram invoiced Beck for alcoholic beverages shipped earlier in 1987. In July 1987, Beck ceased doing business. At Seagram's request, Beck transferred its inventory of Seagram products to another wholesaler.

On June 7, 1988, Beck issued a letter to Seagram, disputing Seagram's account balance of $374,876.77 and claiming credit was due for transferred inventory. Beck additionally asserted a right of set-off against the invoice amount because of unreasonable notice and the lack of a compensatory payment upon termination.

On April 7, June 14, and June 16, 1988, Seagram issued credit memorandums reflecting credits due Beck for the transfer of inventory.

By letter dated April 13, 1989, Seagram's Assistant General Counsel informed Beck that Seagram considered Beck's claim for set-off unfounded. Counsel requested that Beck respond within 30 days to Seagram's demand for payment of $257,581.94, the balance remaining after credits to Beck for transferred inventory.

On October 20, 1989, Seagram brought suit against Beck to collect $257,581.94. On June 18, 1990, the trial court granted summary judgment in favor of Seagram:

"Comes now the Court, and having heard the arguments of counsel and having reviewed the legal memorandums filed by the parties, now finds that no genuine issues of material fact exist regarding Plaintiff's Motion for Summary Judgment, and therefore Plaintiffs have a right to judgment as a matter of law.

In so holding the Court has considered the following:

1. On August 19, 1987, Defendant, by letter, requested credits against the balance owed to Plaintiff in the amount of $117,294.83. In a letter of June 6, 1988, Defendant indicates that Defendant does not owe Plaintiff $374,876.77. If the credit claimed by Defendant in August of 1987 is subtracted from the amount demanded by Plaintiff as of June 6, 1988, a balance exists of $257,581.94.

2. By letter of April 13, 1989, Plaintiff made a final demand upon Defendant of $378,617.23, less credits of $121,025.29, for a total of $257,581.94. This figure is exactly the same as Plaintiff's previous demand of $374,876.77, less Defendant's claimed credits of $117,294.83.

3. That Plaintiff's letter of April 13, 1989 appears to be the first time that Plaintiff acknowledged Defendant's right to the credits Defendant had claimed in August of 1987, therefore Plaintiff's final claim as to the specific amount owed by Defendant to Plaintiff was not made until April 13, 1989. (While Defendant, in its letter of June 7, 1988, alleged that only $226,083.45 was due, Defendant has failed to show the basis for that number. As previously stated, subtracting Defendant's claimed credits from Plaintiff's original demand yields $257,581.94, not $226,083.45.)

4. Since Plaintiff's lawsuit was filed within one year from the date of Plaintiff's final demand, i.e., April 13, 1989, paragraph 16 of the distribution agreement between Plaintiff and Defendant does not act as a bar to Plaintiff's claim. Further, since Defendant did not raise

the arbitration provision contained within paragraph 16 in its Answer, or in its Memorandum in Opposition To Seagram's Motion for Summary Judgment, Defendant has waived any argument with respect to the issue of arbitration.

5. While Defendant may have a valid counterclaim with respect to Plaintiff, the Court finds that said counterclaim has to do with damages resulting from the termination of the distribution agreement and not with respect to the value of goods shipped to Defendant, which is the subject of Plaintiff's Complaint. Since Defendant's counterclaim will not effect [sic] the value of the goods shipped to Defendant, it would be improper to withhold judgment with regard to the value of these goods."

Record, pp. 161–62.

On July 30, 1990, the trial court issued an order certifying the entry of summary judgment as a final judgment.[2] This appeal ensued.

Beck presents a triparte argument in support of its claim that Seagram's lawsuit was commenced after the expiration of a contractual one-year time limitation. First, Beck claims that invoices from Seagram setting forth payment terms of "Net 30 Days" were incorporated into the Distributorship Agreement. Beck further contends that the Agreement clearly provided that any action (other than a suit to enforce arbitration) must be commenced within one year after the cause of action accrues. Third, Beck argues that the contract was breached more than one year before Seagram filed its complaint.

Beck suggests that a breach occurred on the thirtieth day after Seagram issued the September 1987 invoice. Alternatively, Beck claims that Seagram's cause of action arose when Beck refused to pay the outstanding invoice amounts, despite an anticipated credit adjustment. Finally, Beck argues that the latest possible date of accrual of Seagram's cause of action was June 16, 1988, the date on which Seagram issued its final Credit Memo to Beck.

Seagram responds that its claim is not based on the Distributorship Agreement, but upon separate invoices for product sold and delivered to Beck. Secondly, Seagram contends that the one-year limitations period found in Section 16 of the agreement applies only to arbitration proceedings. Finally, Seagram argues that its action was commenced within one year after Seagram's counsel demanded payment of an adjusted account balance and Beck failed to respond.

On an appeal from a summary judgment, we will reverse only where the record reveals a genuine issue of material fact or the trial court incorrectly applied the law. Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Mauller v. City of Columbus* (1990), Ind.App., 552 N.E.2d 500, 502, *trans. denied.*

Where the provisions of a contract are at issue, this court must give effect to the intentions of the parties as expressed in the contract. If the terms are clear, plain and unambiguous, the terms are conclusive. *Union Miniere, S.A. v. Parday Corp.* (1988), Ind.App., 521 N.E.2d 700, 702.

The Distributorship Agreement provides in pertinent part:

5. *Terms of Purchase and Sale.* Terms of payments stipulated by Seagram on each invoice to Distributor shall represent the terms of payment with respect to Products covered by such invoice and shall be of the essence of this contract. The amount and terms of credit extended by Seagram to Distributor shall be in the sole discretion of Seagram.

Record, p. 126.

16. *Arbitration.* Any controversy or claim arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in the highest court of the forum, State or Federal, having jurisdiction.

2. Beck's counterclaim is pending before the trial court.

No proceeding of any kind except an arbitration proceeding shall be commenced as to any controversy or claim arising out of or relating to this contract or the breach or cancellation thereof. No proceeding of any kind except a suit to enforce an arbitration award shall be commenced more than one year after the claim or controversy, which is the subject matter thereof, arises.

Record, p. 130.

The intent of the parties, as expressed by the clear language of the foregoing contract provisions, was that terms of payment stipulated on Seagram's invoices were of the essence of the distributorship agreement and that any proceeding other than a proceeding to enforce an arbitration award was to be commenced within one year after the claim or controversy arose.[3]

Resolution of the ultimate issue of whether Seagram's claim was untimely filed is dependent upon a determination of when Seagram's right of action arose. A breach of contract gives rise to a right of action. A breach of contract is a failure, *without legal excuse*, to perform any promise which forms the whole or part of a contract. Williston, *Contracts* § 1290 (3d Ed.1968) (emphasis added).

Beck and Seagram agree that a buyer's refusal to pay an amount properly due for accepted goods reveals a cause of action for payment. They each agree that, at some point, Beck refused to pay for accepted goods despite Seagram's issuance of a requested credit adjustment; however, they dispute when Beck's refusal to pay occurred. Beck contends that Seagram had an enforceable claim upon receipt of Beck's June 7, 1988 letter expressing Beck's intention to withhold payment to Seagram under any circumstances, i.e., even if Seagram credited Beck's account.

Seagram maintains that the final account balance had not been determined prior to its letter of April 13, 1989. Seagram additionally claims: "Beck's refusal to pay the corrected account balance became apparent only in 1989 when Beck did not remit payment. Beck's so-called 'refusal' to pay in June 1988, the date Beck alleges as the operative date for the running of the limitations period, was quite ambiguous, since Beck simultaneously requested credits on its account and made no calculation of alleged damages." Brief of Appellee, p. 18.

Beck's letter of June 7, 1988 provided:

"I am writing you about the status of the account between my company, Fred A. Beck Company, Inc. ("Beck"), and Seagrams. Your records show a balance due Seagrams of $374,876.77. That balance should, however, be shown as $226,083.45. As explained in our letter to our customer service manager of February 25, 1988, Seagrams has not given Beck credit for transfers made to National Wine & Spirits of Indianapolis. We have signed delivery receipts on these transfers which are availble [sic] for your review.

Regardless of the correct balance, this letter will inform you that Beck respectfully declines to pay the outstanding balance because of the damage caused by Seagrams' termination of Beck.

The reasons for Beck's set-off against the account are as follows:

1. The notice Seagrams gave Beck was unreasonable in that it did not give Beck a fair opportunity to obtain a substitute large supplier. Because of the then-impending holiday season, Beck was not in a position to convince a major supplier to transfer to Beck until after the first of the year. Under the circum-

---

**3.** IND.CODE 26–1–2–725 provides: "An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year, but may not extend it." Seagram and Beck contractually stipulated that the substantive law of New York would govern their agreement. However, the law of the forum state governs in procedural

matters. Statutes of limitations are procedural in nature. *Lee v. Estate of Cain* (1985), Ind. App., 476 N.E.2d 922, 924. Moreover, the language of N.Y. Uniform Commercial Code § 2–725 is identical to the language of I.C. 26–1–2–725. Parties may agree upon a period of limitation where the period is reduced to no less than one year. *Blends, Inc. v. Schottland Mills, Inc.* (1970) 35 A.D.2d 377, 316 N.Y.S.2d 912.

stances, reasonable notice to Beck would have been no less than six months. That would have provided Beck with the opportunity to continue business through the holiday season and recruit other major suppliers thereafter. As a result of the shortness of your notice, Beck lost the value of its business.

The notice becomes even more unreasonable when viewed in the context of our dealings with Seagrams immediately before the termination. During those dealings we made clear to Seagrams the importance of its line to Beck's continued operation. We received Seagrams' assurances that no changes would be made. Two weeks after we received those assurances, Seagrams terminated Beck.

2. Trade custom also requires compensatory payment. Seagrams has acknowledged that Beck's performance was satisfactory. Beck was, therefore, terminated for a reason other than cause, and, under the industry standard, is entitled to compensation.

For these reasons, the amount due Beck from Seagrams likely exceeds the amount due Seagrams from Beck. Therefore, Beck declines to pay its account balance with Seagrams."

Record, pp. 42–43.

Seagram points to the language "the amount due Beck from Seagrams *likely* exceeds the amount due Seagrams" and argues that Beck's refusal to pay was not absolute. Seagram argues: "Until Beck's failure to respond to the direct request for payment of the corrected account balance in 1989, there was no reason to believe that Beck would not conclude that it actually had no basis for recovering damages and that it would pay Seagram the balance requested." Brief of Appellee, p. 18.

4. We note that the record does not support a portion of the trial court's third finding: "That Plaintiffs letter of April 13, 1989, appears to be the first time that Plaintiff acknowledged Defendant's right to the credits Defendant had claimed in August of 1987, therefore Plaintiff's final claim as to the specific amount owed by Defendant to Plaintiff was not made until April 13, 1989." Record, p. 161. The record discloses that Seagram issued credit memorandums dated

The trial court found that Seagram's claim was not contractually barred, in that Seagram's suit had been filed within one year after its issuance of a "final demand." Implicitly, the trial court found that Seagram's claim arose upon Beck's failure to respond to Seagram's April 13, 1989 demand letter.[4] In granting summary judgment, the trial court resolved in Seagram's favor a dispute as to whether Beck's June 7, 1988 letter effectively communicated Beck's refusal to pay Seagram's outstanding invoices.

Summary judgment is not a substitute for trial in determining factual issues but is merely a procedure for applying the law to the facts when no controversy exists as to the facts or the inferences to be drawn therefrom. *Board of Aviation Com'rs v. Hestor* (1985), Ind.App., 473 N.E.2d 151, 153.

More than one inference could be drawn from the June 7, 1988 letter. A reasonable factfinder might conclude that the language "regardless" conveys Beck's definitive refusal of payment. On the other hand, a reasonable factfinder might conclude that a refusal to pay coupled with a request for credit constitutes an attempt to negotiate the account balance rather than an absolute refusal of payment. The existence of conflicting inferences precludes summary judgment.

The grant of summary judgment in favor of Seagram is reversed.

HOFFMAN, J., concurs.

SHIELDS, J., concurs and files separate opinion.

SHIELDS, Judge, concurring.

I agree with the majority's reversal of the trial court's judgment and remand of

April 7, 1988, June 14, 1988, and June 16, 1988, totalling $117,294.83. Additionally, a Statement of Account issued by Seagram on January 31, 1989 discloses a balance due of $257,581.94, reflecting those credits. Record, pp. 18–24. However, Seagram's April 13, 1989 letter appears to be the first time that Seagram made a written denial of Beck's claim for termination compensation.

the cause for further proceedings. In my opinion, the parties agreed in Paragraph 16 of the Distributorship Agreement that any controversy or claim arising out of or relating to the Agreement is subject to arbitration and, therefore, no other proceeding is allowable except an action to enforce an arbitration award. However, if, as here, a controversy or claim is not submitted to arbitration, for whatever reason, the parties further agreed any legal proceeding had to be commenced within one year after the claim or controversy arises.[1] Consequently, I agree with the majority that the "[r]esolution of the ultimate issue of whether Seagram's claim was untimely filed is dependent upon a determination of when Seagram's right of action arose." *Opinion* at 1359. Seagram's action was for an account stated. Appellee's Brief at 3. Genuine issues of fact exist whether and when an account between the parties was stated. The existence of these factual disputes preclude summary judgment.

1. In this action the parties waived the arbitration only provision.