**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA and Hendrickson Motor Sales, Inc., Appellants–Defendants,**

v.

**Richard HUGHES and Shirley Hughes, Co–Administrators of the Estate of Ruth Bilyeu, Appellee–Plaintiff.**

No. 09A02–9803–CV–235.

Court of Appeals of Indiana.

Feb. 17, 1999.

Lawrence M. Hansen, Bruce E. Andis, Landau, Omahana & Kopka, Carmel, Attorneys for Appellants.

John W. Tousley, Caplin, Pehler, Park & Tousley, Indianapolis, Frank E. Tolbert, John S. Damm, Miller, Tolbert, Muehlhausen, Muehlhausen & Groff, P.C., Logansport, Attorneys for Appellees.

## OPINION

SULLIVAN, Judge

Appellants, General Accident Insurance Company of America (General)[1] and Hendrickson Motor Sales, Inc. (Hendrickson), appeal the trial court's grant of summary judgment in favor of Appellees, Richard and Shirley Hughes (collectively Hughes), co-administrators of the estate of Ruth Bilyeu, Terry Bilyeu, as parent and natural guardian of Crystal J. Bilyeu (Crystal), Atlanta Casualty Insurance Company (Atlanta), and Sandra L. Glowe (Glowe).

We reverse and remand.

Appellants present three issues upon appeal, which we rephrase and condense into the following: whether the trial court erred in determining that General's garage liability policy provided excess coverage to a permissive driver, where the permissive driver's personal auto liability insurance satisfied the minimum coverage levels pursuant to Indiana's financial responsibility laws.

On January 28, 1997, Glowe, driving a 1989 Chevrolet Cavalier, collided with a vehicle driven by Crystal. The collision injured Crystal and caused the death of Ruth A. Bilyeu, Crystal's mother and a passenger in the Cavalier. Hendrickson owned the Cavalier,[2] which Glowe was test-driving with the consent and permission of Hendrickson at the time of the collision. Glowe was insured by Atlanta. The Atlanta policy contained liability limits for bodily injury of $25,000 per person and $50,000 per accident—the minimum limits provided by Indiana's financial responsibility law.[3] Further, the Atlanta policy contained an "other insurance" clause, which stated:

"If there is other applicable liability insurance we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance and the insurance on such a vehicle and any other collectible insurance shall be primary." Record at 70.

Hendrickson had a garage liability policy issued by General, which policy had a personal injury limitation of $1,000,000 per accident. General's policy also contained an "other insurance" clause. The clause provided:

"1. When two coverage forms providing liability coverage apply to an 'auto' and:

    a. One provides coverage to a named insured engaged in the business of selling ... 'autos', and

    b. The other provides coverage to a person not engaged in that business, and

    c. At the time of an 'accident' a person described in **1.b.** is operating an 'auto' owned by the business described in **1.a.**, then that person's liability coverage is primary and the coverage form issued to a business described in **1.a.** is excess over any coverage available to that person." Record at 57 (emphasis in original).

In addition, an endorsement to General's policy defined an "insured" as follows:

"(2) Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:

---

1. On January 16, 1998, pursuant to stipulation by the parties, the Cass Circuit Court ordered the addition of Pennsylvania General Insurance Company as a defendant in the instant case. For the sake of convenience, we shall hereafter refer to General and Pennsylvania General Insurance Company collectively as "General."

2. Hendrickson is a corporation doing business within Indiana, selling used cars by and through J.D. Byrider.

3. I.C. 9–25–2–3(1) & (2) (Burns Code Ed. Repl. 1997).

* * *

**(d)** Your customers, if your business is shown in the Declarations as an 'auto' dealership. However, if a customer of yours:

**(I)** Has no other available insurance (whether primary, excess or contingent), they are an 'insured' but only up to the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged.

**(ii)** Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged, they are an 'insured' only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance." Record at 45.

On April 25, 1997, the Hughes filed a Complaint for Declaratory Judgment, naming Hendrickson, General, Atlanta and Glowe as defendants. They requested the court to declare that both General's and Atlanta's contracts provided coverage to Glowe. Atlanta and Glowe filed their Answer to Complaint on May 19, 1997. General filed its response to the Complaint on June 27, 1998, and Hendrickson responded to the Complaint on August 1, 1997.

General filed its Counterclaim, Cross–Claim and Third–Party Claim on June 26, 1997. Terry Bilyeu, as Crystal's parent and natural guardian, was named third-party defendant in that pleading. The Hughes were named counterclaim defendants. Glowe, Atlanta and Hendrickson were named cross defendants in the action. On July 10, 1997, General amended its claim by relabeling the status of Hendrickson from cross defendant to plaintiff.

On October 10, 1997, the Hughes filed a motion for summary judgment. Terry Bilyeu, as third-party defendant, moved to join the Hughes' motion that same day. Glowe subsequently joined the Hughes' summary judgment motion on October 31, 1997. General and Hendrickson also filed a motion for summary judgment on October 10, 1997.

On January 16, 1998, the trial court entered its judgment granting the Hughes' motion for summary judgment and denying that of General and Hendrickson. In its judgment, the court specifically found:

"1. That Atlanta's automobile policy provides primary liability coverage to defend and indemnify Sandra L. Glowe for the accident which claimed the life of the Hughes' decedent, Ruth A. Bilyeu, on or about January 28, 1997.

2. That General's policy issued through Pennsylvania General Insurance Company, to Hendrickson and J.D. Byrider provides excess liability insurance coverage to the permissive user, Sandra L. Glowe, for such damages as Plaintiffs may sustain beyond the primary liability coverage of Atlanta Casualty Insurance Company up to the limits of their coverage." Record at 494.

On appeal from an order granting summary judgment, we apply the same standard as does the trial court. *Standard Mut. Ins. Co. v. Pleasants* (1994) Ind.App., 627 N.E.2d 1327, 1329, *trans. denied.* Summary judgment is appropriate when the evidentiary matter designated to the trial court shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Transcontinental Technical Services, Inc. v. Allen* (1994) Ind.App., 642 N.E.2d 981, 983, 642 N.E.2d 981, *trans. denied.* However, we must reverse the grant of a summary judgment motion where the record reveals a genuine issue of material fact or an incorrect application of the law to the facts. *Ayres v. Indian Heights Volunteer Fire Dep't* (1986) Ind., 493 N.E.2d 1229, 1234; *Fred A. Beck v. Joseph E. Seagram & Sons, Inc.* (1991) Ind.App., 576 N.E.2d 1356, 1358. We do not weigh the evidence but, instead, consider the facts in the light most favorable to the nonmoving party. *Smith v. Allstate Ins. Co.* (1997) Ind.App., 681 N.E.2d 220, 223.

■■■ The instant case involves the interpretation of two insurance contracts: Atlanta's personal auto liability policy and General's garage liability policy. Interpretation of insurance contracts is primarily a question of law for the court. *Standard Mut., supra,* 627 N.E.2d at 1329. When construing a

written insurance contract, we may not extend insurance coverage beyond that provided in the contract. *Id.* Moreover, we may not rewrite the clear and unambiguous language of an insurance contract. *Id.* Such language must be given its plain and ordinary meaning. *Smith, supra,* 681 N.E.2d at 223.

General and Hendrickson contend that Glowe did not qualify as an insured under General's policy, because Glowe, pursuant to the Atlanta policy, had insurance meeting the minimum limits of Indiana's financial responsibility law. Therefore, Appellants argue, General was not obligated to indemnify Glowe. We agree.

Both parties agree that the Atlanta policy provides Glowe's primary coverage. Further, Indiana Code 27-8-9-10 (Burns Code Ed. Repl.1994) states:

> "(a) This section applies if the only motor vehicle insurance coverage provided by the owner of the motor vehicle is under a garage liability policy.
> (b) Notwithstanding section 7 of this chapter,[4] any coverage available to the permittee is primary.
> (c) Recovery may not be made under the garage liability policy until the limits of all coverage available to the permittee have been exhausted."

Because Glowe was a permissive driver of the Cavalier which was owned by Hendrickson and insured under a garage liability policy, it is without question that Atlanta is Glowe's primary insurer pursuant to its personal auto liability contract with her.

■ Glowe was not an "insured" under the General policy. This court, in *Harden v. Monroe Guar. Ins. Co.* (1993) Ind.App., 626 N.E.2d 814, *trans. denied,* faced a factual situation similar to that in the instant case. In *Harden,* Ancel Harden had inspected a 1986 Bronco at the car lot of Independent Auto Brokers (IAB) and taken it home for his wife Lisa Harden (Lisa) to test-drive. The Bronco was held for sale pursuant to an "exclusive listing agreement" between IAB and the vehicle's owner. Lisa was subsequently injured in an automobile accident while driving the Bronco.

At the time of the accident, Monroe Guaranty insured IAB under a garage dealers insurance policy. United Farm Bureau Mutual Insurance Company insured Lisa for an amount equal to Indiana's compulsory financial responsibility limits. Under Monroe Guaranty's policy, the customer of an auto dealership qualified as an "insured" only if she had no other auto insurance or if she was insured to an amount less than the state's financial responsibility limits.[5]

The *Harden* court concluded that Lisa was not an insured. *Harden, supra,* 626 N.E.2d at 819. The court stated that, "a policy provision which limits an insurer's liability for a particular class of drivers to the statutory minimum is valid." *Id.* Moreover, the court noted that such a limitation was not against public policy. Instead, the court observed that, "the coverage furthers the policy underlying our uninsured motorist statute by providing coverage up to the minimum compulsory limits for persons injured on the highways." *Id.*

■ In the instant case, the trial court misapplied the law to the facts in granting the Hughes' summary judgment motion. Glowe had "other available insurance," the Atlanta policy. The Atlanta policy provided coverage up to the requirements of Indiana's financial responsibility law. As in *Harden,* where the permissive driver was not an "insured" under Monroe Guaranty's garage policy, Glowe was not an "insured" under the plain language of General's garage policy. Because she was not an insured, General's policy did not provide Glowe with excess coverage beyond that provided her under the

---

4. I.C. 27-8-9-7 (Burns Code Ed. Repl.1994) requires that the owner's insurance, not that of a permissive driver, provides the primary coverage where the vehicle, at the time it is damaged, was operated with the permission of the owner and its use was within the scope of the permission granted.

5. The definition of "insured" found in the garage liability policy in *Harden* is the same as that found in General's policy. *See Harden, supra,* 626 N.E.2d at 818-19 n. 5.

Atlanta policy. Moreover, General's limitations are consistent with public policy goals by insuring permissive drivers to the minimum levels mandated by the state, if the permissive drivers are not otherwise insured to the minimum levels.[6]

█ Both parties agree that, if given effect, the "other insurance" clauses of the Atlanta and General policies would leave Glowe without liability insurance coverage for the collision of January 28, 1997. However, we conclude that Glowe is covered by the Atlanta policy. Because Glowe did not own the Cavalier, the Atlanta policy provided her coverage for only the "excess over any other *collectible* insurance." Record at 70 (emphasis supplied). As previously noted, Glowe was not an "insured" under General's policy. Insurance under General's policy thus was not "collectible." Therefore, there was no "excess" amount over "other collectible insurance" for which Atlanta was liable. Rather, Atlanta was liable as Glowe's primary insurer for the full amount for which it contracted to indemnify Glowe—Indiana's statutory minimums of $25,000 per person and $50,000 per accident.

The trial court misapplied the law to the facts and incorrectly determined that General's policy provided excess liability insurance coverage to Glowe. We therefore reverse the trial court's grant of the Hughes' motion for summary judgment and remand this cause for further proceedings consistent with this opinion.

SHARPNACK, C.J., and HOFFMAN, Sr.J., concur.

**6.** Our holding today is consistent with I.C. 27–8–9–10, enacted in 1993, which seeks to resolve the dilemma of the "circular riddle" as discussed in *Indiana Ins. Co. v. American Underwriters, Inc.* (1973) 261 Ind. 401, 304 N.E.2d 783, 787 and *Indiana Ins. Co. v. Federated Mut. Ins.* (1981) Ind.App., 415 N.E.2d 80, 83–86, *reh'g denied*. The "circular riddle" develops when two or more insurance policies each contain an "other insurance" clause which forces examination or application of the opposing policy's provisions prior to affording coverage under its own terms. Our supreme court in *American Underwriters* solved the problem by holding that conflicting "other insurance" clauses "are to be ignored and each insurer is liable for a prorated amount of the resultant damage not to exceed his policy limits. In such a case, there exists *dual* primary liability." *American Underwriters, supra* at 787 (emphasis in original). In short, Indiana courts previously resolved the "circular riddle" by finding the conflicting clauses mutually repugnant, disregarding them and prorating the insurance coverage between the policies.

Now, I.C. 27–8–9–10 makes the permissive driver's insurance the primary coverage and requires exhaustion of the permissive driver's coverage prior to seeking recovery under a garage liability policy. However, clarification of what constitutes "primary" insurance, "available" coverage or when a remedy is "exhausted" under the statute would help prevent a renewed confrontation with the "circular riddle." Likewise, defining what makes insurance "collectible" would help avoid future problems with conflicting "other insurance" clauses. We will not endeavor to make further clarifications or refinements of definitions within the context of the instant case. Instead, we leave such clarifications or refinements for future courts to consider or, perhaps more appropriately, for the legislature to address.