Bruce Robert FOX, Appellant–Plaintiff,

v.

Dennis RICE, in his official capacity as Montgomery County Sheriff, and West Central Community Corrections, Appellees–Defendants.

No. 54A01–1003–PL–97.

Court of Appeals of Indiana.

Nov. 4, 2010.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellant.

Kirk A. Horn, Mandel Horn McGrath & Reynolds P.C., Carmel, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Bruce Robert Fox appeals the trial court's grant of summary judgment in favor of West Central Community Corrections ("WCCC") on Fox's claims of false arrest, false imprisonment, violation of rights under the Indiana Constitution and, pursuant to 42 U.S.C. section 1983, under the Fourth Amendment to the United States Constitution. Fox raises three issues for our review, which we restate as: 1) whether the trial court erred when it concluded the tort claim notice period expired before Fox filed his notice, 2) whether Fox's probation was revoked or tolled while he was imprisoned on other charges, and 3) whether WCCC caused Fox's allegedly false imprisonment.

We hold the tort claim notice period expired before Fox filed his notice and therefore whether Fox's probation was revoked or tolled has no bearing on the summary judgment order before us. We also hold Fox's federal claim does not contain a genuine issue of material fact, and therefore affirm the trial court's entry of summary judgment in favor of WCCC.

### Facts and Procedural History [1]

Fox was arrested in January 1997 for child molestation and possession of marijuana. Fox pled guilty to possession of marijuana and was sentenced to one year of probation, among other things. He violated the conditions of this probation, and on February 25, 1998, the trial court modified his remaining probation to thirty-four days imprisonment with credit for seventeen days already served and commitment to WCCC to administer 269 days of home detention. Fox began home detention on February 26, 1998.

In March 1998, while Fox was serving his modified probation sentence, a jury found him guilty of several counts of child molestation stemming from his 1997 arrest and he was taken directly into custody. In April 1998, the trial court sentenced Fox to eighteen years in prison and committed him to the Indiana Department of Correction ("DOC"). At this point, Fox had served only a portion of his modified probation sentence for his 1997 conviction of possession of marijuana. The trial court's sentencing order did not mention Fox's modified probation sentence or orders entered in that cause, and no pleadings or other orders were filed in his child molestation case referring to his modified probation sentence for possession of marijuana. WCCC notified the trial court that Fox's modified probation sentence ceased until further notice.

In June 1998, while in custody of the DOC, Fox signed an acknowledgment that a detainer had been filed regarding his conviction for possession of marijuana. And in February 2004, Fox signed an acknowledgement of his review and advisement of rebuttal rights on an offender evaluation and progress report, which states "Pending Charges: [cause number for Fox's 1997 possession of marijuana case], County Court Montgomery County, IN, issued 06–08–1998, hold type-C. community corrections." Appendix of the Appellant at 270.

In July 2004, Fox became eligible for parole due to various good time and education credits. As a convicted sex offender, Fox could not be released completely without a physical address, but could be released to a county work release center

---

1. We heard oral argument on October 8, 2010, at Westminster Village Retirement Community in West Lafayette, Indiana. We thank Westminster Village for its hospitality and counsel for their advocacy.

for up to thirty days while he secured other housing. However, when the DOC released him on July 15, 2004, he was transferred to and retained by WCCC at the Montgomery County Jail pursuant to a hold on his record. Fox thought there was a mistake because he thought his home detention sentence had run and he had completed his required imprisonment.

While under the authority of WCCC and in the custody of Montgomery County Jail, Fox sought an explanation for his continued imprisonment in several ways. He asked for an explanation from numerous jailors, who gave no meaningful response. He requested and received a chronological case summary from the Montgomery County Clerk of Court, and undertook independent legal research in the jail library. Fox spoke with his Terre Haute parole officer and with a corporal at Montgomery County Jail, who told Fox he "didn't have any paperwork on [Fox]." *Id.* at 181. Fox submitted four to six written special requests to the corporal-in-charge of the Montgomery County Jail to seek an explanation for his detention, all with no response.

Still under the authority of WCCC, Fox was transferred to Warren County Jail in August 2004, where he continued to seek an explanation for his detention. He spoke to numerous jailors and submitted two to four written requests for an explanation, all with no meaningful response.

In July or August of 2004, Charles Willis, a WCCC employee responsible for administering offender intake, received a call from a DOC official who informed him Fox "had completed whatever time he was sent there for and that they showed that he still had some sort of a hold or still had some legal issues with a sentence in Montgomery County." *Id.* at 170. Willis conferred with the Montgomery County Prosecutor's office and the director of the WCCC pro-

gram, and concluded Fox must still complete the modified probation sentence of home detention. Willis informed Fox of his conclusion, and on August 26, 2004, Willis wrote a memorandum to the Montgomery County Prosecutor's office that stated he met with Fox to discuss Fox's situation and frustration. Willis "advised [Fox] he would have to petition the court for release from this cause." *Id.* at 153.

Also on August 26, 2004, Willis completed and submitted to the Montgomery County Prosecutor a "Petition to Revoke or Modify Community Corrections Placement," a form that states Fox was assigned to WCCC for nine months by the Montgomery County Court after conviction for possession of marijuana on February 25, 1998. *Id.* at 235. On this form, Willis selected the first of two available boxes on the second page to request "[a] warrant be issued for [Fox's] arrest and the matter be set for a hearing on this petition." *Id.* at 236. The Montgomery County Court subsequently issued an arrest warrant, which was served upon Fox in jail on September 21, 2004. The other choice on the form, which Willis did not select, requests "[a] summons be issued ordering the defendant to appear for a hearing in this petition." *Id.*

Willis later stated he did not intend to cause Fox to continue to be incarcerated nor to indicate a violation. Willis intended his memorandum and petition submitted to the prosecutor to be informative, and he advised Fox of the same. Although Fox believed he should not have been in prison, Willis informed him he could not be released without a trial court order. Willis asserted this petition was the only way under WCCC's system to seek clarification by the trial court.

On October 31, 2004, Fox submitted an inmate grievance form that explained his sentences for his possession of marijuana

conviction, probation violation, and child molestation convictions, listed his time served, asserted he had completed his incarceration, and requested immediate release. Fox was then transferred back to Montgomery County Jail. On November 4, 2004, the trial court ordered Montgomery County Jail to release Fox for time served, and he was released that same day.

Fox filed a Tort Claims Notice on May 3, 2005, and a complaint on July 11, 2006, alleging false arrest, false imprisonment, and violations of the Indiana Constitution against the Montgomery County Sheriff, the Montgomery County Prosecutor, and WCCC. He filed an amended complaint on September 22, 2008, adding an allegation of violation of rights under the United States Constitution, brought pursuant to 42 U.S.C. section 1983.

In October 2008, the trial court entered summary judgment on all of Fox's state law claims against Fox and in favor of the Sheriff, the Prosecutor, and WCCC. In December 2009, the trial court entered summary judgment on his claim under the United States Constitution against Fox and in favor of the Sheriff, the Prosecutor, and WCCC. Fox now appeals the judgments as to WCCC.[2]

### Discussion and Decision

### I. Standard of Review

The standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The moving party bears the burden of showing no genuine issue of material fact in reliance upon specifically designated evidence. *Estate of Pflanz v.*

*Davis,* 678 N.E.2d 1148, 1150 (Ind.Ct.App. 1997). If the moving party satisfies its burden, the burden shifts to the non-movant to set forth specifically designated evidence showing there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute, or where undisputed facts are capable of supporting conflicting inferences on such an issue. *Briggs v. Finley,* 631 N.E.2d 959, 963 (Ind.Ct.App.1994), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Gen. Accident Ins. Co. of Am. v. Hughes,* 706 N.E.2d 208, 210 (Ind.Ct.App.1999), *trans. denied.* We may affirm a trial court's grant of summary judgment upon any theory supported by the designated materials. *Sims v. Barnes,* 689 N.E.2d 734, 735 (Ind.Ct.App.1997), *trans. denied.*

On appeal, we are bound by the same standard as the trial court, and we consider only those materials which the parties designated at the summary judgment stage. *Pflanz,* 678 N.E.2d at 1151. We liberally construe all designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact for trial. *Dunifon v. Iovino,* 665 N.E.2d 51, 55 (Ind.Ct.App.1996), *trans. denied.*

### II. Tort Claims Notice

■ The Indiana Tort Claims Act ("ITCA") bars tort claims against a political subdivision unless notice of a tort claim is filed within 180 days "after the loss occurs." Ind.Code § 34–13–3–8(a). However, this 180-day period is tolled "[i]f a person is incapacitated and cannot give notice as required," to expire 180 days

---

2. In September 2010, this court granted a motion to dismiss party to appeal filed by Rice, the Montgomery County Sheriff. Neither is the Prosecutor a party to this appeal.

"after the incapacity is removed." Ind. Code § 34–13–3–9.

Fox argues the trial court erred by concluding the statutory 180–day period to provide notice of his tort claim began on July 15, 2004, the date his allegedly unlawful imprisonment began. Rather, he points out he was not released until November 4, 2004, and argues "*after* the loss occurs" consequently began on that date. *Id.* (emphasis added). WCCC responds that Fox's alleged loss accrued the day his allegedly wrongful imprisonment began because he was immediately aware that it might be wrongful.[3]

■ Fox cites *Wallace v. Kato,* 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), for the proposition that the limited notice period in false imprisonment cases does not begin to run until the false imprisonment ends. In *Wallace,* the Supreme Court also held, however, that the "end" is not necessarily the date of release, but rather the date an imprisonment becomes no longer "false"—which could be the date the defendant "becomes held pursuant to ... [legal] process." *Id.* at 389, 127 S.Ct. 1091 (emphasis omitted); *Johnson v. Blackwell,* 885 N.E.2d 25, 30 (Ind. Ct.App.2008). Service of an arrest warrant while in prison therefore ends false imprisonment because the imprisonment is no longer false, but rather is pursuant to an arrest warrant. *See Harrington v. City of Nashua,* 610 F.3d 24, 30 (1st Cir.2010) ("In the typical situation, the requisite legal process comes ... in the form of an arrest warrant (in which case the arrest would constitute the seizure) ....") (citation omitted). Once legal process is served the claim of false imprisonment ends. *Wallace,* 549 U.S. at 390, 127 S.Ct.

1091; *e.g., Johnson,* 885 N.E.2d at 30–31. Therefore, when Fox was served with an arrest warrant on September 21, 2004, the 180–day period to provide notice of a claim began, and expired before May 3, 2005. *See Johnson,* 885 N.E.2d at 30–31.

■ Fox next argues for application of the continuing wrong doctrine so the beginning of the 180–day period would have begun upon his release—at the end of the continuing and ongoing wrong. The continuing wrong doctrine "applies where an entire course of conduct combines to produce an injury." *Crowe, Chizek, & Co., L.L.P. v. Oil Tech., Inc.,* 771 N.E.2d 1203, 1210 (Ind.Ct.App.2002), *trans. denied.* To apply the doctrine, Fox "must demonstrate that the alleged injury-producing conduct was of a continuous nature." *Johnson,* 885 N.E.2d at 31. Fox cites his incarceration in spite of his repeated protests as the continuing wrong.

■ However, "the doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point." *C & E Corp. v. Ramco Indus., Inc.,* 717 N.E.2d 642, 645 (Ind.Ct.App.1999). Therefore, Fox's immediate suspicion of a mistake, his repeated protests of his imprisonment, and jailors' and others' comments that they did not know why he was there, are facts that should have led Fox to discover his claims, thereby prohibiting application of the continuing wrong doctrine.

■ Fox next contends that while incarcerated he was "incapacitated" for purposes of filing notice of a tort claim, so the

---

**3.** The parties disagree as to whether May 3, 2005, the date Fox filed his notice, is 180 or 181 days after November 4, 2004. If it were 181 days, the question of whether the notice period began in July or November 2004 would be moot. Fox correctly asserts that May 3, 2005 is 180 days after November 4, 2004. *See* Ind. Trial Rule 6.

period to provide notice began the date he was released. WCCC responds that Fox waived this argument by not raising it to the trial court and, in the alternative, that incarceration alone does not render Fox incapacitated and Fox presents no other evidence of incapacitation.

■ We address Fox's alleged waiver first as a threshold issue, recognizing that "[g]enerally, a party may not raise an issue on appeal that was not raised to the trial court, even in summary judgment proceedings." *McGill v. Ling*, 801 N.E.2d 678, 687 (Ind.Ct.App.2004), *trans. denied.* "The crucial factor, however, in determining whether [a party] may inject what appears to be a new issue into the appeal is whether [the relevant opposing party] had unequivocal notice of the existence of the issue and, therefore, had an opportunity to defend against it." *United Farm Bureau Mut. Ins. Co. v. Lowe*, 583 N.E.2d 164, 168 (Ind.Ct.App.1991), *trans. denied.*

■ Fox did not raise the issue of his incapacitation in either of his responsive motions to WCCC's motions for summary judgment. However, WCCC, in its motion for summary judgment as to Fox's state law claims, stated simply and without elaboration, "[Fox] was not incapacitated nor denied access to the courts during this time." App. of Appellant at 118 (citation omitted). This is unequivocal notice of the existence of the issue. *See, e.g., Ansert v. Indiana Farmers Mut. Ins. Co.*, 659 N.E.2d 614, 617 (Ind.Ct.App.1995) ("When a party raises a[ ] [particular] issue . . . in its own motion for summary judgment, that party had notice of the issue and cannot argue on appeal that the issue has been waived."), *trans. dismissed.* There-

fore, Fox has not waived this argument on appeal.

An individual is incapacitated under pertinent Indiana law if he:

(2) is unable:

    (A) to manage in whole or in part the individual's property;

    (B) to provide self-care; or

    (C) both;

because of . . . incarceration, confinement, detention, . . . or other incapacity; . . . .

    . . . .

Ind.Code § 29–3–1–7.5.[4] However, both Fox and WCCC acknowledge that incarceration alone does not necessarily render an inmate incapacitated for purposes of the ITCA. But "where a prisoner can demonstrate incapacity by virtue of his incarceration, a notice deadline exemption may be permitted." *McGill v. Indiana Dep't of Corr.*, 636 N.E.2d 199, 204 (Ind.Ct.App. 1994).

In *McGill v. Indiana Department of Correction*, a prisoner sought exemption from the tort claims notice requirement because of his incarceration. He asserted the "vagaries of prison life and missing librarians" rendered him incapacitated so that he could not file notice timely. *Id.* at 202. We rejected that assertion, but held there was a genuine issue of material fact as to whether the circumstances of his incarceration, in particular the evidence of a prison librarian's absence on two specific days, rendered him incapacitated by virtue of his incarceration.

Fox supports his incapacitation argument solely by stating "he was without realistic access to civil attorneys to consult regarding his potential civil claims." Re-

---

4. Although this statute defines "incapacitated person" in the context of probate and more specifically guardianship proceedings, it also clearly applies here, where other cases have applied it to the ITCA. *See, e.g., McGill v. Indiana Dep't of Corr.*, 636 N.E.2d 199, 204 (Ind.Ct.App.1994); *South Bend Comm. Schs. Corp. v. Widawski*, 622 N.E.2d 160 (Ind.1993).

ply Brief of the Appellant at 5. Lack of "realistic access" to an attorney is insufficient to render Fox incapacitated. Indeed, we remanded *McGill v. Indiana Department of Correction* to determine whether, based on the facts, the prisoner (who was pro se) was incapacitated by the prison librarian's absence. We did so after lengthy quotation and discussion of opinions by the United States Supreme Court and the Indiana Supreme Court, which acknowledge the difficulties for pro se prisoners to file notice. In *McGill v. Department of Correction* we did not directly address the issue of whether a pro se prisoner is "incapacitated." However, for us to address this issue and conclude in the affirmative would create the problematic incentive for prisoners to forego legal counsel. Further, and more importantly, we lack authority to legislate that pro se prisoners are per se "incapacitated"; this is a question for the General Assembly.

In addition, we remanded *McGill v. Department of Correction* to determine if the particular facts presented to the trial court effectively rendered the inmate incapacitated. Here we cannot remand with similar instructions because other than his lack of access to counsel Fox did not present specific facts of his incapacitation to the trial court or even in his appellate briefs. Consequently, Fox's argument that he was incapacitated, supported solely by the argument that he was without access to counsel, does not raise an issue of fact meriting reversal and remand.

Therefore, the ITCA bars Fox's state-law claims against WCCC because his loss occurred more than 180 days before the date he filed notice, the continuing wrong doctrine is inapplicable, and he was not incapacitated.

### III. Revocation and Tolling of Probationary Periods

Because Fox's state law claims are barred by the ITCA, we need not address Fox's argument that his modified probation sentence was neither revoked nor tolled and therefore could not have affected his imprisonment obligation in 2004.

### IV. WCCC and False Imprisonment

The ITCA bars Fox's claims under state law, but not his claim under the Fourth Amendment to the United States Constitution brought pursuant to 42 U.S.C. section 1983. *See Cantrell v. Morris*, 849 N.E.2d 488, 506 (Ind.2006). Fox's false imprisonment claim under federal law raises the following legal issues: the sufficiency of his complaint and the sufficiency of his designated evidence to survive summary judgment. While Fox asserts the issue of whether WCCC negligently caused Fox's allegedly false imprisonment is a genuine issue of material fact to be determined at trial, these preliminary legal issues are appropriate for our review. On summary judgment, the trial court correctly concluded that Fox adequately pled his federal claim by briefly stating the facts of the case and citing 42 U.S.C. section 1983 as authority.

Fox and WCCC agree that WCCC is an agency of Montgomery County, and as such, Fox may establish municipal liability by showing "(1) an express policy caus[ed] the loss when enforced; (2) a widespread practice constituting a custom or usage' caus[ed] the loss; or (3) a person with final policymaking authority caus[ed] the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir.2008) (citation omitted).

Fox contends the following acts by WCCC are sufficient to establish municipal liability: 1) the design of WCCC's form which did not allow Willis to bring Fox's matter and concern before the trial court;

2) WCCC's keeping him imprisoned regardless of his repeated protests, while WCCC staff were unsure of the reason or propriety of doing so, and when WCCC's only basis for doing so was a hold reflected in its computer database; and 3) WCCC's request—by Willis—for an arrest warrant for Fox. WCCC counters that none of the above were wrongful, nor rise to the level of an express policy or a widespread practice, and Fox did not establish that Willis had final policymaking authority. We address Fox's contentions in turn.

▮ First, WCCC's form did not in itself violate Fox's rights. Even if it is defective and WCCC has no other adequate form for WCCC employees to seek trial court clarification, the lack of an adequate form here is not "an express policy causing the loss when enforced." *Walker,* 526 F.3d at 977. It is not such a policy because a form is a written means of communicating a policy, not a policy in itself. For example, even if a form is discriminatory as written, the form is not the discriminatory policy; rather, it is evidence of discrimination. Here, the lack of an adequate form alone is not an express policy, and in the same vein, is not a widespread practice that constitutes a custom or usage that led to Fox's loss.

▮ Second, and presuming Fox attacks a policy "evidenced" by WCCC's *lack* of a policy to seek trial court clarification, this argument also falls short without evidence of other similar incidents. The Seventh Circuit Court of Appeals has stated:

No government has, or could have, policies about virtually everything that might happen. The absence of a policy might thus mean only that the government sees no need to address the point at all, or that it believes that case-by-case decisions are best, or that it wants to accumulate some experience before selecting a regular course of action. At times, the absence of a policy might reflect a decision to act unconstitutionally, but the Supreme Court has repeatedly told us to be cautious about drawing that inference.

*Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir.2005). As such, the Seventh Circuit has required "more evidence than a single incident to establish liability" for an omission in a policy or lack of a policy. *Id.* Fox did not designate evidence of other incidents, and the only relevant evidence before us is Willis's deposition testimony that the situation where he might need to amend the form or do something the form does not provide for has "never . . . come up before." App. of Appellant at 176. Accordingly, Fox's argument as to the form is insufficient to support his claim.

Fox next argues WCCC is liable because it kept him imprisoned in 2004 pursuant to a February 1998 hold for seventeen days of imprisonment and 269 days of home detention despite Fox's protest and WCCC's uncertainty regarding the hold's application. In particular, Fox takes issue with the trial court's conclusion that the hold on his record was facially valid. The validity of the hold, or appearance of validity of the hold, in all of its forms—the computer system, the court order, the DOC documents that Fox signed, etc.— might be a genuine issue of material fact. However, because we are proceeding under a municipal liability analysis, even if this hold were invalid WCCC cannot be liable unless retaining Fox in reliance on this invalid—for argument's sake—hold constitutes an express policy, widespread practice, or action by one with final policymaking authority. Again, as an isolated incident, this cannot be deemed an express policy or widespread practice.

▮ WCCC and Fox agree that the only WCCC official who could potentially

lead to WCCC's liability is Willis, but the issue then becomes whether Willis had the necessary policymaking authority. When considering whether an individual has final policymaking authority "on any particular policy decision," we must consider the following factors: "(1) lack of constraints by policies made by others; (2) lack of meaningful review; and (3) a grant of authority to make the policy decision." *Wragg v. Thornton*, 604 F.3d 464, 468–69 (7th Cir. 2010) (citation and emphasis omitted).

The only evidence we have of Willis's authority is his deposition, in which he briefly describes his duties and his cooperation with the WCCC director and county prosecutor. This evidence does not support an affirmative inference of any of the above-three elements because it does not show a lack of constraint, lack of review, nor grant of authority to make a policy decision. As such, Fox did not present nor designate sufficient evidence to make this a genuine issue of material fact. Consequently, because we conclude that Willis did not have the necessary "final policymaking authority," we need not determine—or reverse and remand for trial determination of—the validity of the hold.

Fox finally alleges that Willis's filing a petition to revoke Fox's probation makes him a person with final policymaking authority causing his loss, or is evidence of an express policy or widespread practice. Because this is an isolated incident by Willis and Willis lacks final policymaking authority, this argument fails for the reasons above.

### Conclusion

Based on the facts and law above, Fox's state law claims against WCCC are barred by the notice requirement of the ITCA, and Fox's federal claim does not contain a genuine issue of material fact. Therefore, the trial court's summary judgment orders are affirmed.

Affirmed.

KIRSCH, J., and MAY, J., concur.