**Herbert F. McGILL, Appellant–Plaintiff,**

v.

**INDIANA DEPARTMENT OF CORRECTION and State of Indiana, Appellees–Defendants.**

**No. 32A05–9312–CV–477.**

Court of Appeals of Indiana,
Fifth District.

June 29, 1994.

Rehearing Denied Sept. 12, 1994
and Sept. 29, 1994.

John Emry, Franklin, for appellant-plaintiff.

Pamela Carter, Atty. Gen., James L. Reed, Jr., Deputy Atty. Gen., Indianapolis, for appellees-defendants.

SHARPNACK, Chief Judge.

Herbert F. McGill appeals from the granting of summary judgment in favor of the defendants Indiana Department of Correction and the State of Indiana in McGill's personal injury action against the defendants. We reverse.

McGill raises one issue on appeal, which we restate as whether the trial court erred in granting summary judgment in favor of the defendants on the basis that McGill had failed to comply with the notice requirements of the Indiana Tort Claims Act.

McGill was injured while mowing the lawn at the Indiana Youth Center (IYC) in Plainfield, Indiana, on June 3, 1992. In November, 1992, McGill prepared his notices of tort claim, which are required by the Indiana Tort Claims Act to be filed within 180 days of the injury. McGill signed up to go to the law library during the evening of Friday, November 27, 1992, to mail the notices, but the law library was closed because the law librarian did not appear. On Monday, November 30, 1992, the 180th day following the injury, McGill again tried to use the law library, but it was again closed. McGill was able, however, to give the notices to an IYC law library worker, who placed them in the IYC mailbox that afternoon. The notices were postmarked December 1, 1992, and notice was received by the Indiana Department of Correction on December 2, 1992, and by the Attorney General's office on December 3, 1992. McGill filed his complaint in the action on April 15, 1993. The State filed its answer on June 10, 1993. On September 2, 1993, the State filed its motion for summary judgment. On October 6, 1993, the court heard arguments on the State's motion. On October 13, 1993, the Court entered its judgment for the State, finding that McGill's claim is barred for failure to comply with the time limits of Ind.Code § 34–4–16.5–6.

■ When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: We may only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434; Ind.Trial Rule 56(C), (H). We may not reverse summary judgment orders on the ground that there is a genuine issue of material fact unless the material facts and relevant evidence were specifically

designated to the trial court. *Id.* The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Id.* All properly asserted facts and reasonable inferences should be resolved against a moving party. *Indiana Board of Public Welfare v. Tioga Pines* (1993), Ind., 622 N.E.2d 935, 940.

■ The Indiana Tort Claims Act (the Act) provides that

> "Except as provided in section 8 of this chapter a claim against the state is barred unless notice is filed with the attorney-general and the state agency involved within one hundred eighty [180] days after the loss occurs."

Ind.Code § 34–4–16.5–6. Under section 8 of the Act,

> "If a person is incapacitated and cannot give notice as required in section 6 or 7 of this chapter, the person's claim is barred unless notice is filed within one hundred eighty (180) days after the incapacity is removed."

I.C. § 34–4–16.5–8. As provided in section 2 of the Act, "incapacitated" has the meaning set forth in I.C. § 29–3–1–7.5, which defines "incapacitated person" to include, in pertinent part, an individual who is unable

> "(A) To manage in whole or in part the individual's property;
>
> (B) To provide self-care; or
>
> (C) Both;
>
> because of insanity, mental illness, mental deficiency, physical illness, infirmity, habitual drunkenness, excessive use of drugs, *incarceration*, confinement, detention, duress, fraud, undue influence of others on the individual, or other incapacity...."

I.C. § 29–3–1–7.5(2) (emphasis added). Thus, incarceration is considered a condition which may incapacitate a claimant under the Act and permit an extension of the period for filing notice.

In the present case, McGill handed his notices to the law library worker at the IYC on November 30, 1992, the 180th and last day of the statutory period. The worker put

them in the mail that afternoon, but they were not postmarked until December 1, 1992.

▮▮▮ Under section 11 of the Act, notice must be in writing and must be delivered in person or by registered or certified mail. I.C. § 34–4–16.5–11. Notice is considered "filed" upon mailing by the prescribed methods, not upon actual receipt. *Wallis v. Marshall County Commissioners* (1989), Ind., 546 N.E.2d 843, 844. However, "[a]s the only purpose of the requirement that the notice be hand delivered or sent registered or certified mail is to assure the notice will be received by the proper officials," notice filed by regular mail constitutes substantial compliance if it is received within the statutory time limit. *Burggrabe v. Board of Public Works* (1984), Ind.App., 469 N.E.2d 1233, 1236. The notice provisions of the Act must be strictly construed against limitation on a claimant's right to bring suit. *South Bend Community Schools v. Widawski* (1993), Ind., 622 N.E.2d 160, 162.

McGill argues that his claim should not be time-barred because he mailed his notices on the 180th day after his injury by handing them to an IYC law library worker. McGill contends that reading *Wallis* and *Burggrabe* together, along with the policy of construing the statute in favor of the pursuit of claims, indicates that he substantially complied with the time limit.

▮▮▮ Before addressing McGill's arguments on substantial compliance, however, we raise *sua sponte* the issue of whether the court erred in granting summary judgment because McGill was "incapacitated" as provided in section 8 of the Act.

Indiana's statutory definition of "incapacitated persons" for purposes of the Act includes those who are unable to manage their property or to provide self-care because of incarceration. I.C. § 29–3–1–7.5. We recognize, however, that incarceration may not incapacitate a litigant. It is by no means certain that the circumstances of McGill's incarceration acted as an impediment to his filing the required notices in a timely manner. Indeed, like the many *pro se* litigants and appellants who file documents from prison, McGill had access to postal facilities and to a constitutionally mandated law library. *See Engle v. State* (1984), Ind., 467 N.E.2d 712, 715. McGill had ample opportunity to mail his notices during the six months prior to the deadline and could have used the regular mails at virtually any time before the last day, the law librarian's absence on November 27 and 30, 1992, notwithstanding. McGill has demonstrated no good reason for his failure to comply with the statutory time limit.

McGill claims that his efforts to mail the notices earlier were thwarted by the "vagaries of prison life and missing librarians," Appellant's Brief, p. 12, and argues that his ability to comply with the statute was compromised by his incarceration. In support, McGill cites the United States Supreme Court's decision in *Houston v. Lack* (1988), 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245, where the Court held that the date a *pro se* prisoner delivers notice to prison authorities for mailing should be considered the date of filing, not the date of receipt. The court reasoned as follows:

"Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to en-

trust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped 'filed' on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice."

*Id.,* 487 U.S. at 271, 108 S.Ct. at 2382–89.

The State argues that *Houston* may be distinguished on the bases that (1) the federal statute at issue in that case did not define when or with whom a notice should be filed, and (2) the Court's decision was premised on the fact that prison authorities in the case kept detailed logs for recording the date and time at which they receive papers for mailing, and therefore the moment of receipt by prison authorities could easily be referenced. We agree with the State that these factors prevent the ruling in *Houston* from being directly applied to the present case, but we believe that the Court's description of limitations on incarcerated litigants holds true for Indiana prisoners.

For us to find, however, that the very fact of incarceration renders a prisoner incapacitated under section 8 of the Act would be tantamount to permitting a prisoner to delay filing a claim until one hundred eighty (180) days after incarceration has ended, however, many years later that might be.

In *South Bend Community Schools Corp., supra,* the Indiana Supreme Court held that minority, although not specifically included in the statutory definition of incapacity, would be considered an incapacitation for purposes of notice under the Act. As such, the status of minority "postpones the deadline for the required notice of tort claim ... until within 180 days after minority ends." *Id.,* 622 N.E.2d at 162. As the injured person in that case was seven years old at the time of the injury, the supreme court was apparently untroubled by a possible extension for the filing of notice of eleven or perhaps even fourteen years.[1] The court wrote:

"Because of ... natural and legal incapacities, minor persons are clearly restrained in their ability to provide self-care or to fully manage their own property. Surely, our legislature did not intend to recognize a tort claims notice deadline exemption *providing protection for incarcerated persons* and those suffering from substance abuse, yet leaving children unprotected."

*Id.* (emphasis added).

In this passage, the court implies that a deadline exemption exists for incarcerated persons, but the court leaves us the question of whether the exemption is to be granted to all incarcerated persons automatically or is dependent upon a particular restraint of prisoners' "ability to provide self-care or to fully manage their own property." *Id.* By definition, we believe, a prisoner is restrained in his or her ability to provide self-care, particularly with respect to the prisoner's interactions with the legal system.

We do not believe, however, that the deadline exemption need extend throughout the entire length of a prisoner's term of incarceration to be consistent with the supreme court's opinion in *South Bend Community Schools Corp.*

---

1. In his dissent in *South Bend Community Schools Corp.,* Chief Justice Shepard noted that no general definition of "minor" existed in the Indiana Code. 622 N.E.2d at 163. "The first definition I can find," the Chief Justice wrote, "appearing in the Uniform Transfers to Minors Act at Ind.Code Ann. § 30–2–8.5–10 (West Supp. 1993) defines a minor as one who is less than twenty-one years old." *Id.*

The purpose of the notice statute is to advise the State "of the accident so that it may promptly investigate the surrounding circumstances." *Galbreath v. City of Indianapolis* (1970), 253 Ind. 472, 255 N.E.2d 225, 229. The reason for the existence of exemptions to the notice statute is fairness to those under legal disabilities and compliance with Article 1, § 12, of the Indiana Constitution, which provides that "every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." *South Bend Community Schools Corp.*, 622 N.E.2d at 162. A prisoner's ability to provide notice in a timely fashion may be impaired by his incarceration, but the mere status of being incarcerated, without more, by no means renders compliance with the notice statute impossible. As noted above, a prisoner is not without resources in exercising his legal rights. We conclude, therefore, that the status of incarceration alone is insufficient to render a claimant incapacitated under the Act, but where a prisoner can demonstrate incapacity by virtue of his incarceration, a notice deadline exemption may be permitted.

We now turn to McGill's argument that the trial court erred in granting summary judgment in favor of the State because McGill substantially complied with the notice requirements of the Act.

 Substantial compliance with the notice requirements is sufficient when the purpose of the notice requirement is satisfied. *Indiana State Highway Comm'n v. Morris* (1988), 528 N.E.2d 468, 471. The question of compliance is not a question of fact for the jury but ultimately a legal determination to be made by the court. *Morris*, 528 N.E.2d at 471.

In the case of an incarcerated claimant under the Act, the doctrine of substantial compliance should govern, and thus compliance with the statutory notice requirements should be determined on a case by case basis. If a claimant has made a good faith effort to comply with the notice requirements and the purpose of the notice requirement has been satisfied, any delays caused by his status as prisoner should permit the court to grant an exemption from a strict

application of the 180–day statutory deadline. In the present case, McGill presented to the trial court evidence that the circumstances imposed upon McGill by his incarceration, namely the absence of the law librarian on November 27 and 30, 1992, may have prevented him from filing notice in the requisite manner. There exists, therefore, a factual issue as to whether McGill suffered an incapacity by virtue of his incarceration, thereby meriting a notice deadline exemption.

Accordingly, we reverse the trial court's granting of summary judgment in favor of the Indiana Department of Correction and State of Indiana.

REVERSED.

RUCKER and ROBERTSON, JJ., concur.