**FIFTH THIRD BANK, Appellant/Defendant/Third–Party Plaintiff,**

v.

**PNC BANK, Indiana, Inc., Appellee/Plaintiff,**

John O. Sturdy, Jr., Diana K. Sturdy, Sturdy Construction, Inc., and John W. Waggoner, Appellees/Defendants,

and

**Young, Lind, Entres & Kraft Title Co, LLC., Appellee/Third– Party Defendant.**

No. 31A01–0711–CV–527.

Court of Appeals of Indiana.

April 29, 2008.

Craig D. Doyle, Kurt V. Laker, Doyle & Friedmeyer, P.C., Indianapolis, IN, for appellant.

## OPINION

BRADFORD, Judge.

Appellant/Defendant/Third–Party Plaintiff Fifth Third Bank ("Fifth Third") appeals from the trial court's dismissal of Appellee/Third–Party Defendant Young, Lind, Entres & Kraft Title Company ("YLEK") from the foreclosure action originally filed by Appellee/Plaintiff PNC Bank against Appellees/Defendants John O. Sturdy, Jr., Diana K. Sturdy, Sturdy Construction, John W. Waggoner, and Appellant/Defendant/Third–Party Plaintiff Fifth Third. We reverse and remand with instructions.

## FACTS

On February 14, 1997, John O. Sturdy, Jr., and Diana K. Sturdy owned lot fifty-five in the Cedar Pointe subdivision in Lanesville, Harrison County. That day, Sturdy Construction executed and delivered a promissory note for $36,000 and a mortgage to PNC. On June 14, 2001, John W. Waggoner purchased lot fifty-five from Sturdy Construction and executed a note and mortgage in favor of Fifth Third. PNC apparently now maintains that YLEK, who was involved in the sale to Waggoner, failed to properly close the "PNC Bank loan account," and that, as a result, PNC's mortgage on lot fifty-five survived the sale. On December 14, 2001, July 12, 2002, and August 2, 2002, Waggoner executed three additional mortgages in favor of Fifth Third.

On October 29, 2002, PNC filed suit against the Sturdys, Sturdy Construction, Waggoner, Fifth Third, and unknown occu-

pants of lot fifty-five, seeking to foreclose on its alleged mortgage and force a judicial sale of the property. In its complaint, PNC alleged that Sturdy Construction had failed to make a note payment that was due April 14, 2002. Waggoner, Fifth Third, and the unknown occupants were named as defendants to answer what interest, if any, they had in lot fifty-five, Waggoner through his purchase, Fifth Third through the mortgages it held, and unknown occupants through unknown interests. On April 23, 2004, Fifth Third filed a complaint against YLEK, as a third-party defendant, alleging that any failure to properly extinguish PNC's interest in lot fifty-five was a result of YLEK's negligence and that it should be held liable for any of Fifth Third's losses resulting therefrom.

On June 24, 2004, YLEK served PNC with a request for production of documents and for admissions. PNC's responses to the requests were due on July 24, 2004. On August 23, 2004, and on November 8, 2004, YLEK again requested responses from PNC. On May 12, 2006, YLEK moved to continue the trial date and requested sanctions based on PNC's continuing failure to comply with its request for production of documents. On June 19, 2006, PNC and YLEK agreed to an entry ordering PNC to comply with YLEK's request within thirty days. As of September 25, 2006, PNC had not complied, and YLEK, joined by Fifth Third and Waggoner, moved the trial court to dismiss PNC's complaint for failure to comply with discovery.

On February 26, 2007, the trial court issued an order on YLEK's motion to dismiss, granting it as to YLEK and denying it as to Fifth Third and Waggoner. In the order, the trial court noted that PNC's delay in providing discovery was "particularly egregious, which should not be with-

out sanction[.]" Appellant's App. p. 77. Fifth Third now appeals the trial court's denial of the motion to dismiss as to it.

## DISCUSSION AND DECISION

### Whether the Trial Court Abused its Discretion in Granting the Motion to Dismiss only as to YLEK

#### A. Prima Facie Error

No party other than Fifth Third, including PNC, has filed a brief. "When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf." *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind.2006). "Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Id.* (citing *Gibson v. City of Indpls.,* 242 Ind. 447, 448, 179 N.E.2d 291, 292 (1962)). "Prima facie error in this context is defined as, 'at first sight, on first appearance, or on the face of it.'" *Id.* (citing *Santana v. Santana,* 708 N.E.2d 886, 887 (Ind.Ct.App.1999)). "Where an appellant is unable to meet this burden, we will affirm." *Id.*

#### B. Trial Rule 37

Fifth Third contends that the trial court's dismissal of YLEK from the suit constituted an abuse of discretion.

[T]rial courts are vested with broad discretion with respect to discovery disputes. Decisions regarding discovery matters will be reversed only if there has been an abuse of that discretion. An abuse of discretion occurs when a trial court reaches a conclusion which is against logic and the natural inferences which can be drawn from the facts and circumstances before the trial court. Moreover, we note that there must be a rational basis for the trial court's decision.

*Hartford Fin. Servs. Group, Inc. v. Lake County Park and Recreation Bd.,* 717 N.E.2d 1232, 1234 (Ind.Ct.App.1999) (citations omitted).

The Indiana Rules of Trial Procedure govern the consequences of a party's failure to comply with a discovery order. Trial Rule 37(B)(2) provides, in relevant part:

Sanctions by court in which action is pending. If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(a) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(b) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(d) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination under Rule 35;

(e) Where a party has failed to comply with an order under Rule 35(A) requiring him to produce another for examination, such orders as are listed in paragraphs (a), (b), and (c) of this subdivision, unless the party failing to comply shows that he is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

■ As we have observed, "[t]here are three clearly discernable purposes underlying the discovery sanctions authorized by Trial Rule 37." *State v. Wilbur,* 471 N.E.2d 14, 17 (Ind.Ct.App.1984) *(citing Cine Forty-Second St. Theatre v. Allied Artists,* 602 F.2d 1062, 1066 (2d Cir.1979)). "First, they aid in securing compliance with discovery requests and orders." *Id.* "Secondly, they ensure that a party will not profit from its failure to comply." *Id.* "Finally, they have a general deterrent effect helping to assure future compliance." *Id.*

Fifth Third contends that the trial court abused its discretion in that its order did not punish PNC, the disobedient party. We agree with Fifth Third. Both the wording of Trial Rule 37 and our jurisprudence indicate that the sanctions to be imposed pursuant to a violation of a discovery order should be to the detriment of the offending party, and we see none to PNC here.[1] Although there was some benefit conferred on YLEK, an order issued for the purpose of benefiting the offended party does not serve any of the purposes for Trial Rule 37 that we have recognized unless it also punishes the offending par-

---

1. Indeed, to the extent that the order relieves PNC of the burden of ever having to comply with the discovery order, it actually seems to benefit PNC.

ty.[2] Here, due to the relationship between the parties, the trial court's order has benefited YLEK and harmed Fifth Third, without punishing PNC in the least. In the end, we fail to see how an order that does not punish PNC would aid in ensuring compliance with future discovery orders or prevent PNC from profiting from its intransigence. We therefore conclude that the trial court abused its discretion in crafting an order that failed to punish PNC and reverse its dismissal of YLEK from the case. On remand, if the trial court concludes that sanctions are still justified, it is instructed to impose sanctions in a manner consistent with this opinion and Trial Rule 37 that serves to punish PNC for its failure to comply with discovery orders.

We reverse the judgment of the trial court and remand with instructions.

BAKER, C.J., and DARDEN, J., concur.

2. In what is perhaps the more typical case involving only two parties, an order punishing the offending party would likely benefit the other party in the same measure; that benefit, however, should not be the *raison d'être* for the order but merely incident to the punishment.