**Bruce Robert FOX, Appellant–Plaintiff,**

v.

**Dennis RICE, in his official capacity as Montgomery County Sheriff, and West Central Community Corrections, Appellees–Defendants.**

No. 54A01–1003–PL–97.

Court of Appeals of Indiana.

Feb. 24, 2011.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellant.

Kirk A. Horn, Mandel Horn McGrath & Reynolds P.C., Carmel, IN, Attorney for Appellee.

**OPINION ON REHEARING**

ROBB, Chief Judge.

Bruce Robert Fox petitions for rehearing of our November 4, 2010 opinion. In that opinion, we affirmed the trial court's grant of summary judgment in favor of West Central Community Corrections ("WCCC") on Fox's claims of false arrest, false imprisonment, violation of rights under the Indiana Constitution and, pursuant to 42 U.S.C. section 1983, under the Fourth Amendment to the United States Constitution. *Fox v. Rice*, 936 N.E.2d 316 (Ind.Ct.App.2010). We grant Fox's petition for rehearing to clarify our reasoning, but reaffirm our opinion in all respects.

On rehearing, Fox first argues our conclusion that an arrest warrant ended his alleged false imprisonment is inconsistent with *Malley v. Briggs*, 475 U.S. 335, 106

S.Ct. 1092, 89 L.Ed.2d 271 (1986). In *Malley*, officers sought and received an arrest warrant from a judge without probable cause. Despite determining it was judicial error to issue the warrant and that the officer relied on the warrant in making the arrest, the Court refused to absolve the officer because he failed to exercise "reasonable professional judgment." *Id.* at 346, 106 S.Ct. 1092. Analogizing *Malley*, Fox argues the warrant did not end his false imprisonment because WCCC, via Willis, failed to exercise reasonable professional judgment.

We disagree. While we held the arrest warrant ended Fox's alleged false imprisonment, we did not hold that it necessarily extinguished all wrongful conduct such that he had no legal redress. We discussed *Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), where the Court stated false imprisonment ends once the victim becomes held pursuant to legal process, and thereafter the "entirely distinct" tort of malicious prosecution accrues for *"wrongful institution* of legal process." *Id.* at 390, 127 S.Ct. 1091. Addressing nearly the same issue as before us, the Court concluded: "[t]hus, petitioner's contention that his false imprisonment ended upon his release from custody … must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date…." *Id.* We applied the same reasoning in *Johnson v. Blackwell*, 885 N.E.2d 25 (Ind.Ct.App.2008), holding that a claimant failed to timely file his complaint alleging false imprisonment and false arrest.

The holding that Fox's false imprisonment ended when he was served with an arrest warrant is indeed consistent with *Wallace* and *Johnson*, and also *Malley*. Although judicial error in granting an arrest warrant might not extinguish the improper actions of an officer, *Malley*, 475 U.S. at 345, 106 S.Ct. 1092, improper actions by a prosecutor can, and in this case did, "end" Fox's false imprisonment. This nuanced distinction makes sense because one could seek a remedy against a prosecutor for malicious prosecution, but there is no equivalent remedy against a judicial officer. Therefore, by allowing improper actions by a prosecutor to end a claim against an officer, claimants are not denied legal redress for an injury; their redress is simply divided in time between an officer and a prosecutor.

In addition, *Malley* involved an officer's immunity and not, as here, a statute of limitations. Therefore, while *Malley* was especially concerned with foreclosing all forms of a plaintiff's legal redress from allegedly improper conduct, our conclusion here would not foreclose all forms of redress in a similar case, if filed timely. As mentioned, it would simply split a plaintiff's redress between an officer and a prosecutor.[1]

Fox next challenges our conclusion that Willis did not have final policymaking authority. Fox points to Willis's deposition testimony that prior to seeking the arrest warrant Willis conferred with the director, who for the sake of argument we will presume had final policymaking authority, about what to do regarding Fox. However, conferring or consulting with one who has final policymaking authority does not mean Willis himself was bestowed with final policymaking authority. "The question is whether the promulgator, or the actor, as the case may be—in other words, the decisionmaker—was at the apex of au-

---

1. Admittedly, our holding that Fox's false imprisonment ended when he was served with an arrest warrant effectively forecloses Fox's claims against any officials. However, this would not be the case had he pursued a malicious prosecution claim.

thority for the action in question." *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir.2001), *cert. denied*, 535 U.S. 1017, 122 S.Ct. 1606, 152 L.Ed.2d 620 (2002). Similarly, *"[d]eliberate* inaction [by one with final authority] might be convincing evidence of delegation of final ... authority, or of ratification...." *Id.* at 470 (emphasis in original). However, delegation of a task or permission to act in a certain way does not grant the permittee final policymaking authority. *Id.* at 469.

Here, Willis and the director discussed what to do and Willis subsequently acted. There is no evidence the director delegated to Willis final policymaking authority itself or that WCCC subsequently took *deliberate* inaction to ratify Willis's act. Therefore, Willis lacked final policymaking authority.

Subject to the foregoing clarifications, our opinion is in all respects affirmed.

KIRSCH, J., and MAY, J., concur.