# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**CARL PAUL LAMB**
Carl Lamb and Associates
Bloomington, Indiana

ATTORNEY FOR APPELLEE,
City of Bloomington, Indiana:

**ANDREW P. WIRICK**
Hume Smith Geddes Green
 & Simmons, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE,
Monroe County, Indiana:

**JAMES S. STEPHENSON**
**IAN L. STEWART**
Stephenson Morow & Semler
Indianapolis, Indiana

**FILED**

Sep 20 2012, 9:19 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

CODY WALDRIP,                                    )
                                                 )
    Appellant-Plaintiff,                        )
                                                 )
       vs.                                   )     No. 53A01-1203-CT-135
                                                 )
ANGELA WALDRIP, CITY OF BLOOMINGTON,)
INDIANA, MONROE COUNTY, INDIANA,                 )
STATE OF INDIANA,                                )
                                                 )
    Appellees-Defendants.                       )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Erik Allen, Special Judge
Cause No. 53C06-1004-CT-974

**September 20, 2012**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Cody Waldrip appeals the trial court's dismissal of his complaint against Angela Waldrip ("Angela"), the City of Bloomington ("Bloomington"), and Monroe County. We affirm in part, reverse in part, and remand.

**Issues**

The issues before us are:

      I.     whether Waldrip's appeal was timely filed;

      II.    whether the trial court properly granted Bloomington's motion for judgment on the pleadings;

      III.   whether the trial court properly dismissed all of Waldrip's claims against Angela; and

      IV.   whether the trial court properly dismissed all of Waldrip's claims against Monroe County.

**Facts**

Waldrip alleges that on April 15, 2008, his then-wife, Angela Waldrip, falsely stated to Bloomington Police Department officers that Waldrip had battered her. The officers arrested Waldrip, and he was charged with Class D felony domestic battery. After Waldrip was arrested, Angela filed for and obtained a protective order against him through the Monroe County Circuit Court. On April 17, 2008, Angela stated to Bloomington Police Department officers that Waldrip had violated the protective order. An officer then located Waldrip and arrested him, and he was charged with Class A misdemeanor invasion of privacy.

2

At the time of these arrests, Angela was employed by the Monroe County Circuit Court as a court reporter. Additionally, Waldrip and Angela were preparing to divorce and Waldrip alleges that Angela made false criminal accusations against him in order to gain an advantage regarding custody of their children. Waldrip further alleges that Angela abused her position as an employee of the Monroe County Circuit Court in obtaining the protective order against Waldrip.

Waldrip alleges that he was incarcerated in the Monroe County Jail while awaiting trial. The Monroe County Prosecutor's Office tried Waldrip before a jury in September 2009; the jury acquitted Waldrip. Waldrip accuses Angela of having committed perjury during this trial. After his acquittal in this trial, Waldrip continued to be held on other pending charges against him. On December 2, 2009, the prosecutor dismissed the remaining charges against Waldrip.[1]

On December 14, 2009, Waldrip filed a tort claims notice against Monroe County, Bloomington, and Angela. Waldrip filed a complaint in state court against those three parties on April 15, 2010, which stated both federal and state law claims and which was twice amended. The complaint was removed to federal court, but Waldrip later agreed to dismiss all of the federal claims, and the case was remanded to state court on January 25, 2011.

---

[1] The record is unclear as to which charges were tried in September 2009 and what remained pending after that trial and acquittal. There is some reference in the record to other allegations made by Angela against Waldrip, aside from the original domestic battery and invasion of privacy charges. Waldrip's complaint, however, describes only the April 2008 arrests and battery and invasion of privacy charges.

3

Waldrip's second amended complaint raised claims against Angela for false imprisonment, abuse of process, malicious prosecution, defamation, intentional infliction of emotional distress, tortious interference with child custody and/or parenting time, and civil perjury. Against Bloomington, Waldrip alleged claims of false arrest, false imprisonment, abuse of process, malicious prosecution, and defamation.[2] Against Monroe County, Waldrip alleged claims of false imprisonment, abuse of process, malicious prosecution, defamation, respondeat superior liability for Waldrip's actions, and negligent hiring and/or retention of Waldrip. The complaint also sought punitive damages against all three parties.

Monroe County and Angela filed motions to dismiss Waldrip's second amended complaint, and Bloomington filed a motion for judgment on the pleadings. On June 22, 2011, the trial court signed three separate orders granting those motions and dismissing Waldrip's complaint in its entirety. However, apparently there was some confusion regarding distribution of those orders. Additionally, the chronological case summary ("CCS") contains an entry on June 27, 2011, stating that Bloomington's motion for judgment on the pleadings had been granted, and an entry on June 28, 2011, stating that Monroe County's motion to dismiss had been granted. There was no mention in the CCS of Angela's motion to dismiss having been granted. On November 23, 2011, Waldrip filed a "Request for Court Action," asserting that it was "unclear to the Plaintiff which of the Defendants' motions have or have not been ruled upon." App. p. 167. On November

---

[2] Bloomington seems to assert that the claims of malicious prosecution and abuse of process do not apply to it. However, on those counts the complaint clearly refers to "the Defendants" jointly. App. p. 50.

4

29, 2011, the trial court issued the following notice, entitled "Clerical Mistake Corrected":

> The Court notes that on June 22, 2011 Special Judge Eric Allen issued an Order on Monroe County's Motion to Dismiss Pursuant To Trial Rule 12(b)(6), Order On City of Bloomington's Motion For Judgment On The Pleadings Pursuant to Trial Rule 12(C) AND Order On Angela Waldrip's Motion To Dismiss. Court issues all orders to parties of record.

Id. at 6.

Waldrip filed a motion to correct error on December 28, 2011. Monroe County filed a written response to the motion, claiming in part that it was untimely because it was filed more than thirty days after final judgment was entered. However, Monroe County did not appear at the hearing on the motion to correct error held on March 2, 2012. On March 6, 2012, the trial court denied the motion to correct error. Waldrip now appeals. This court's motions panel previously has denied Monroe County's motion to dismiss the appeal as untimely.

## Analysis

### *I. Timeliness of Appeal*

Before turning to the merits of Waldrip's appeal, we address Monroe County's restated argument in its brief that we should dismiss the appeal as untimely. Monroe County contends that there was a final judgment on June 28, 2011, making Waldrip's motion to correct error in December 2011 and subsequent appeal from the denial of that motion untimely. Although our motions panel has already denied a request by Monroe

5

County to dismiss this appeal, we are not precluded from reconsidering that decision. See Marlett v. State, 878 N.E.2d 860, 863 (Ind. Ct. App. 2007), trans. denied. "Nonetheless, we generally are reluctant to reverse a ruling of the motions panel unless it clearly erred as a matter of law." Id. at 863-64. We cannot reach that conclusion here.

The timeliness of an appeal affects our ability to consider the appeal. Georgos v. Jackson, 790 N.E.2d 448, 451 (Ind. 2003). An appeal must be initiated within thirty days of a final judgment, or alternatively within thirty days of a motion to correct error being denied or deemed denied, or the right to appeal is forfeited. Haste v. State, 967 N.E.2d 576, 577 (Ind. Ct. App. 2012) (citing Ind. Appellate Rule 9(A)(1)). A motion to correct error likewise must be filed within thirty days of a final judgment. Ind. Trial Rule 59(C). As expressly stated in both Trial Rule 59(C) and Appellate Rule 9(A)(1), a judgment is "final" when it is noted in the CCS. Moreover, a final judgment is one that disposes of all claims as to all parties, ending the case and leaving nothing for future determination. Georgos, 790 N.E.2d at 451; see also Ind. App. R. 2(H)(1). This definition of "final judgment" applies in the context of both appeals and motions to correct error. See In re Barnett's Estate, 159 Ind. App. 491, 497-98, 307 N.E.2d 490, 493-94 (1974).

Here, although the trial court signed three orders on June 22, 2011, granting Angela's, Monroe County's, and Bloomington's motions to dismiss or for judgment on the pleadings, only the orders regarding Monroe County's and Bloomington's motions were contemporaneously noted in the trial court's CCS. Thus, there was no "final judgment" at that time because the ruling on Angela's motion to dismiss had not yet been

6

noted in the CCS; it also appears that Waldrip did not receive actual notice of that ruling. The trial court did not enter a ruling in the CCS regarding the granting of Angela's motion to dismiss until November 29, 2011. It was only at that time that there was a final judgment against Waldrip that resolved all claims as to all parties and it was only at that time that the thirty-day clock for filing a motion to correct error or notice of appeal began to run. Waldrip's motion to correct error filed on December 28, 2011 was therefore timely, as was his later notice of appeal. Consequently, we will not dismiss this appeal.

## II. Claims Against Bloomington

We first address the dismissal of Waldrip's claims against Bloomington. Bloomington was the only defendant to file a motion for judgment on the pleadings, as opposed to a motion to dismiss. When ruling on a motion for judgment on the pleadings under Indiana Trial Rule 12(C), a court must view the pleadings in a light most favorable to the non-moving party and with every intendment regarded in his or her favor and determine whether the complaint is sufficient to constitute any valid claim. Fox Dev., Inc. v. England, 837 N.E.2d 161, 165 (Ind. Ct. App. 2005). Our standard of review is de novo, and we will affirm the trial court's grant of a Rule 12(C) motion for judgment on the pleadings if it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. Id. In applying this test, we may look only at the pleadings, with all well-pleaded material facts alleged in the complaint taken as admitted, supplemented by any facts of which a court may take judicial notice. Id.

7

If the pleadings present no issues of material fact and the acts shown by the pleadings clearly entitle a party to judgment, the entry of judgment on the pleadings is appropriate. Id. at 164. "But when a motion for judgment on the pleadings is predicated on matters extraneous to the pleadings, the motion should be treated in the same manner as a motion for summary judgment." Id. Such matters include materials that would be admissible for summary judgment purposes, including depositions, answers to interrogatories, admissions, and affidavits. Id. If a trial court intends to treat a motion for judgment on the pleadings as a motion for summary judgment, as permitted by Trial Rule 12(C), it must give the parties notice that it intends to do so and provide the parties with a reasonable opportunity to present all pertinent material to the court. Id. at 164-65.

The sole basis for Bloomington's motion for judgment on the pleadings was its claim that Waldrip did not comply with the notice provision of the Indiana Tort Claims Act ("ITCA"). Generally, ITCA bars claims against a political subdivision of the State unless a plaintiff has filed notice of the claim with the entity's governing body within 180 days after a loss occurs. Ind. Code § 34-13-3-8(a). A loss occurs for purposes of ITCA "'when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another.'" Reed v. City of Evansville, 956 N.E.2d 684, 691 (Ind. Ct. App. 2011) (quoting Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992)), trans. denied. Compliance with the notice provisions of ITCA is a procedural precedent the plaintiff must prove and the trial court must determine prior to trial. Brown v. Alexander, 876 N.E.2d 376, 383 (Ind. Ct. App.

8

2007), <u>trans. denied</u>. A governmental defendant may raise the issue of a plaintiff's noncompliance with ITCA's notice provision in a responsive pleading listing it as an affirmative defense. <u>Id.</u> at 383-84. If the defendant raises such a defense, the plaintiff bears the burden of proving compliance. <u>Id.</u> at 384.

Here, Bloomington asserts that the entirety of the conduct upon which Waldrip's claims against it rests occurred in April 2008, in connection with Waldrip's initial arrests and confinement by officers of the Bloomington Police Department and the officers' written reports of those arrests. Waldrip's filing of a tort claim notice on December 14, 2009, was much later than 180 days after April 2008. Waldrip makes two arguments as to why his tort claim notice was timely.

First, he contends that his "loss" did not become complete and the ITCA 180-day notice period did not start until December 2, 2009, when the prosecutor dismissed the remaining charges against him, pursuant to the "continuing wrong" doctrine. <u>See, e.g.</u>, <u>Fox v. Rice</u>, 936 N.E.2d 316, 322 (Ind. Ct. App. 2010). As we held in <u>Fox</u>, however, this doctrine does not apply if a plaintiff knows of facts that should lead to the discovery of a cause of action, even if his or her relationship with the tortfeasor continues beyond that point. <u>Id.</u> Here, Waldrip's complaint establishes that he knew of his claims regarding false arrest, false imprisonment, and abuse of process at the time of his original arrests in April 2008, as well as who was responsible for those claims. In addition, his claim of defamation is based upon the probable cause reports prepared by the Bloomington police

9

officers, which also were written in April 2008 and distributed to a prosecutor at that time.

At least one of Waldrip's claims against Bloomington, however, was in fact not tangible until the final dismissal of the remaining criminal charges against him on December 2, 2009. In particular, a claim of malicious prosecution requires proof that a proceeding was terminated in the plaintiff's favor. See Butt v. McEvoy, 669 N.E.2d 1015, 1017 (Ind. Ct. App. 1996). Waldrip's claim for malicious prosecution against Bloomington—or against Angela and Monroe County for that matter—did not accrue until December 2, 2009.

In Fox, we held that when a plaintiff makes a claim of false imprisonment against the government, the false imprisonment ends when the person being detained is served with legal process, such as an arrest warrant. Fox, 936 N.E.2d at 322 (citing Wallace v. Kato, 549 U.S. 384, 127 S. Ct. 1091 (2007)). Thus, the plaintiff's ITCA notice filed more than 180 days after the false imprisonment ended via service of an arrest warrant while imprisoned was untimely, and we refused to apply the "continuing wrong" doctrine to extend the notice time period to include the entire time that the plaintiff was incarcerated. Id. On rehearing, however, we clarified that although the service of such process may have ended the plaintiff's false imprisonment, it did not necessarily extinguish all wrongful conduct such that the plaintiff had no legal redress. Fox v. Rice, 942 N.E.2d 167, 168 (Ind. Ct. App. 2011), trans. denied. In particular, we noted the

availability of a malicious prosecution action, even after a false imprisonment has ended. Id.

Here, we conclude that Waldrip's tort claim notice was timely as to his claims of malicious prosecution, against Bloomington as well as Angela and Monroe County. However, the notice was not timely under the continuing wrong doctrine as to his claims against Bloomington for false arrest, false imprisonment, abuse of process, and defamation. See Livingston v. Consolidated City of Indianapolis, 398 N.E.2d 1302, 1303-04 (Ind. Ct. App. 1979) (holding that tort claim notice was untimely as to claims of false arrest, false imprisonment, and assault and battery, but timely as to claim of malicious prosecution).

The second argument Waldrip makes to excuse the delay in the filing of a tort claim notice—and which would save his claims against Bloomington for false arrest, false imprisonment, abuse of process, and defamation—is that he was incapacitated until December 2, 2009, by reason of his incarceration in the Monroe County Jail while awaiting trial on the allegedly false charges initiated by Angela. Indiana Code Section 34-13-3-9 provides that if a person is incapacitated, that person has 180 days after removal of the incapacity to file an ITCA notice. Thus, Waldrip asserts, his notice filed twelve days after his release from incarceration and removal of his alleged incapacity was timely.

In McGill v. Indiana Dep't of Corr., 636 N.E.2d 199 (Ind. Ct. App. 1994), we addressed whether an incarcerated person is incapacitated for purposes of filing an ITCA

11

notice. We noted that under the version of ITCA then in existence, "incapacitated" had the meaning set forth in the Probate Code. McGill, 636 N.E.2d at 201 (citing I.C. § 34-4-16.5-2 (1994)). The Probate Code defined then, and still defines, an incapacitated person as one who is unable:

> (A) to manage in whole or in part the individual's property;
>
> (B) to provide self-care; or
>
> (C) both;
>
> because of insanity, mental illness, mental deficiency, physical illness, infirmity, habitual drunkenness, excessive use of drugs, incarceration, confinement, detention, duress, fraud, undue influence of others on the individual, or other incapacity . . . .

I.C. § 29-3-1-7.5(2) (emphasis added). Under this definition of incapacitated, we held:

> A prisoner's ability to provide notice in a timely fashion may be impaired by his incarceration, but the mere status of being incarcerated, without more, by no means renders compliance with the notice statute impossible. . . . [A] prisoner is not without resources in exercising his legal rights. We conclude, therefore, that the status of incarceration alone is insufficient to render a claimant incapacitated under the Act, but where a prisoner can demonstrate incapacity by virtue of his incarceration, a notice deadline exemption may be permitted.

McGill, 636 N.E.2d at 204.

The prisoner in McGill claimed to have attempted to timely submit an ITCA notice against the State, but that he had been unable to do so because of the unavailability of the prison's law librarian, who handled the mailing of legal notices, at the deadline date. We reversed the trial court's grant of summary judgment in favor of the State on

12

the issue of untimely notice, stating that there was an outstanding factual issue regarding whether the prisoner had been incapacitated by virtue of his incarceration, thus warranting an extension of the ITCA notice deadline. Id.

More recently, we revisited McGill in Fox. We continued to rely upon the Probate Code's definition of "incapacitated" in analyzing a prisoner's claim that his incarceration had rendered him incapacitated for purposes of filing an ITCA notice. Fox, 936 N.E.2d at 323 n.4.[3] Similar to McGill, the governmental defendants filed a motion for summary judgment after a prisoner filed claims for false arrest, false imprisonment, and violations of the Indiana and United States Constitutions, based on untimely filing of an ITCA notice. The plaintiff/prisoner in Fox apparently did not designate any evidence regarding the particular circumstances of his incarceration, instead solely asserting that "'he was without realistic access to civil attorneys to consult regarding his potential civil claims.'" Fox, 936 N.E.2d at 323. We held that such an allegation was insufficient under McGill to state specific facts of incapacitation and affirmed the grant of summary judgment to the governmental defendants based on untimely filing of an ITCA notice. Id. at 324.

Although Bloomington contends that this case is very similar to Fox, we cannot ignore the difference in procedural posture between Fox and this case. Bloomington asserts in its brief, "there was a period of time after April 15, 2008, in which [Waldrip] was out of jail, so even if jail did 'incapacitate' him it did not do so sufficient to extend

---

[3] The current version of ITCA has no "Definitions" section that defines "incapacitated" or any other word, unlike the version of ITCA we analyzed in McGill. The parties make no argument, however, that we should not continue to rely upon the Probate Code's definition of "incapacitated."

the Notice of Tort Claim." Appellee Bloomington's brief, p. 6. Waldrip states in his brief, by contrast, that he was "incarcerated in the Monroe County Jail under lockdown for twenty-three (23) hours per day" while his first criminal trial was pending, and that after conclusion of that trial in September 2009, he "was remanded to custody on other allegations which were pending, for which he was held until December 2, 2009." Appellant's Br. p. 16. These factual allegations are not supported by any citation to the record in either brief. Indeed, there could be no facts in the record that would support either assertion, or any facts at all regarding the particulars of Waldrip's incarceration, because this case was resolved on a motion for judgment on the pleadings and motions to dismiss, not summary judgment. The trial court gave no indication that it was treating the defendants' motions as ones for summary judgment and the parties submitted no evidence in support of them. Additionally, no evidence was presented at the motion to correct error stage of these proceedings regarding Waldrip's incarceration.

It is only the contents of the pleadings that are relevant here. Waldrip's complaint refers to the particulars of Waldrip's incarceration only once, when it states that he "was incarcerated for over one (1) year and forced to stand two (2) criminal trials." App. p. 47. Waldrip did not in any way plead in his complaint that he complied with ITCA's notice requirement or that any delay in filing such a notice was the result of incapacitation, and he clearly was not required to do so. A plaintiff filing suit against a governmental entity is not required to plead compliance with ITCA's notice requirement, because such requirement is not an element of the tort claim itself. Thompson v. City of Aurora, 263

14

Ind. 187, 194-95, 325 N.E.2d 839, 843-44 (1975). Rather, noncompliance with the notice requirement is a defense for the governmental entity to raise in its responsive pleading. Id.

Looking solely to the contents of the complaint, we cannot say that Bloomington has established as a matter of law that Waldrip failed to comply with ITCA's notice requirement.[4] To the contrary, Waldrip's notice regarding malicious prosecution was timely as a matter of law. As for the other counts of the complaint, there simply is an insufficient record at present to address Waldrip's claim that he was incapacitated by virtue of his incarceration and that such incapacitation prevented him from timely filing a notice. We anticipate that the notice argument could be resolved one way or the other through summary judgment proceedings, by which evidence could be presented regarding the extent and nature of Waldrip's incarceration while awaiting trial. At this juncture, however, dismissal of the false arrest, false imprisonment, abuse of process, and defamation counts of Waldrip's complaint against Bloomington on the basis of lack of notice is premature. Bloomington presents no other argument in support of its motion for judgment on the pleadings and, therefore, we reverse the granting of that motion.

## II.  Claims Against Angela

Next, we address Waldrip's argument that the trial court improperly dismissed his claims against Angela. Unlike Bloomington, Angela filed a motion to dismiss under

---

[4] Technically, in reviewing a motion for judgment on the pleadings, a court is to review all of the pleadings, including answers. Fox Development, 837 N.E.2d at 164 n. 1. However, any answer Bloomington may have filed in this case was not transmitted to this court on appeal, nor has Bloomington made any reference to it in its brief.

15

Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief could be granted. A motion to dismiss under this rule tests the legal sufficiency of the claims in a complaint, not the facts supporting them. Droscha v. Shepherd, 931 N.E.2d 882, 887 (Ind. Ct. App. 2010). Our review of the granting of a motion to dismiss under Rule 12(B)(6) is de novo. Id. We must view the complaint in a light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. Id. "A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief." Id. We must accept all of a complaint's allegations as true and determine whether it states any set of allegations upon which the trial court below could have granted relief to the plaintiff. Id. Dismissal of a complaint under Trial Rule 12(B)(6) is disfavored generally because such motions undermine the policy of deciding causes of action on their merits. Id.

Angela has not filed a brief in this appeal. In such a situation, we need not undertake the burden of developing arguments on behalf of an appellee and may reverse if the appellant demonstrates prima facie error. Fifth Third Bank v. PNC Bank, 885 N.E.2d 52, 54 (Ind. Ct. App. 2008). Prima facie error means "at first sight, on first appearance, or on the face of it." Id. We will affirm if an appellant does not meet this burden. Id.

We note that Waldrip has not provided any argument on appeal as to the propriety of the dismissal of the following claims he originally made against Angela: false

16

imprisonment, civil perjury, tortious interference with child custody and/or parenting time, and defamation. Waldrip has not demonstrated prima facie error in the trial court's dismissal of those counts of the complaint against Angela, and we affirm the dismissal of those counts. That leaves claims remaining against Angela for abuse of process, malicious prosecution, and intentional infliction of emotional distress.

Angela's motion to dismiss argued in part that dismissal of Waldrip's complaint was required because of the alleged untimely filing of an ITCA notice. Our reasoning rejecting that argument as made by Bloomington also applies to Angela and we will not affirm the dismissal of Waldrip's complaint against Angela on that basis. Unlike Bloomington, however, Waldrip also argued that she was entitled to immunity as a governmental employee under different provisions of ITCA. We will address those provisions.

Regarding the abuse of process claim, Waldrip alleged that Angela, "while using her official capacity as an Official Court Reporter, abused her power in said position by gaining special favors . . . to expedite and/or otherwise enter an Ex Parte Protective Order against Cody," and that she "abused her power in said position to gain an advantage over Cody in a dissolution of marriage action." App. p. 50. For the malicious prosecution claim, Waldrip alleged that Angela "individually and/or in concert [with the other defendants] acted with malice," and that she "individually or in concert did not have probable cause to institute the prosecutions, including both the Protective Order action and/or the criminal proceedings." Id. Finally, regarding the intentional infliction of

17

emotional distress claim, Waldrip alleged that Angela "knowingly and intentionally made false and misleading statements against Cody, which resulted in a Protective Order being entered and criminal charges and prosecution being initiated," that her "conduct was extreme and outrageous," and that it caused Waldrip "severe emotional distress." Id. at 55-56. There are two clear overarching themes to these allegations: first, that Angela intentionally and/or knowingly but falsely accused Waldrip of battering her and invading her privacy in order to gain a personal advantage in child custody proceedings; and second, that she abused her position as a court reporter to procure the protective order.

In her motion to dismiss, Angela argued that she was immune from all liability under ITCA pursuant to Indiana Code Section 34-13-3-3(6), which provides that a "governmental . . . employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he initiation of a judicial or an administrative proceeding." Angela also relied upon Indiana Code Section 34-13-3-5(c), which provides:

> A lawsuit filed against an employee personally must allege
> that an act or omission of the employee that causes a loss is:
>
> (1)    criminal;
>
> (2)    clearly outside the scope of the employee's employment;
>
> (3)    malicious;
>
> (4)    willful and wanton; or
>
> (5)    calculated to benefit the employee personally.

18

> The complaint must contain a reasonable factual basis supporting the allegations.

The mere fact of government employment does not by itself mean that ITCA applies to that employee. See Burke v. Board of Directors of Monroe County Pub. Library, 709 N.E.2d 1036, 1040 (Ind. Ct. App. 1999), aff'd in relevant part on r'hg, trans. denied. Rather, a causal relationship must exist between the plaintiff's injury and government employment. Id. Additionally, because ITCA is in derogation of common law, we construe it narrowly against a grant of immunity. East Chicago Police Dep't v. Bynum, 826 N.E.2d 22, 26 (Ind. Ct. App. 2005), trans. denied.

Here, with respect to the claims of malicious prosecution and intentional infliction of emotional distress, we believe Waldrip sufficiently alleged in his complaint that Angela made false accusations against him outside the scope of her employment and purely in her role as a private citizen. At the very least, the complaint alleges a mixture of purely private and official conduct by Angela. Additionally, the alleged false accusations by themselves not only bore no causal relationship to her employment as a court reporter, but were solely for her personal benefit in the child custody proceedings against Waldrip. We also note that the general purpose of ITCA's immunity provisions is to permit public employees to exercise the independent judgment necessary to carry out their duties without the threat of harassment by litigation or threats of litigation over decisions made in the scope of their employment. Celebration Fireworks, Inc. v. Smith, 727 N.E.2d 450, 452 (Ind. 2000). Angela's alleged decision to attempt to "frame"

19

Waldrip with false criminal accusations would not fulfill this purpose. As such, and in the absence of any argument by Angela to the contrary, we conclude she is not entitled to rely upon the governmental employee immunity provisions of Indiana Code Sections 34-13-3-3(6) and 34-13-3-5(c) with respect to Waldrip's claims of malicious prosecution and intentional infliction of emotional distress.

The abuse of process claim is more complicated. Even if the complaint clearly alleged that Angela was acting for her own benefit in abusing her position to obtain the protective order, thus negating immunity under Indiana Code Section 35-13-3-5(c)(5), we still must address the separate grant of immunity under Section 34-13-3-3(6) to government employees acting within the scope of their employment and losses resulting from "[t]he initiation of a judicial or an administrative proceeding." Under this count of the complaint, Waldrip repeatedly—and solely—alleged that Angela was acting in "her official capacity as an Official Court Reporter" when she abused that position to obtain the protective order against Waldrip. App. p. 50. Thus, Waldrip alleges Angela was acting within the scope of her employment with respect to the abuse of process claim.

We also conclude that Angela's obtaining of a protective order and Waldrip's alleged damages flowing therefrom—the sole basis for the abuse of process claim—clearly is related to the initiation of a judicial proceeding. A "judicial proceeding" for purposes of this provision of ITCA has been defined as follows:

> "Judicial proceeding means any proceeding for the purpose of obtaining such remedy as the law allows. . . . When a regularly constituted court of justice is clothed with authority

> to hear and determine a question of fact or a mixed question of law and fact, upon evidence, written or oral, to be produced before such court, and thereupon to render a decision affecting the material rights or interests of one or more persons or bodies corporate, Such proceeding by the court must be regarded as judicial, and the decision by the court may properly be denominated a judgment."

Livingston v. Consolidated City of Indianapolis, 398 N.E.2d 1302, 1304-05 (Ind. Ct. App. 1979) (quoting Treloar v. Harris, 66 Ind. App. 59, 68, 117 N.E. 975, 978 (1917)). This definition would apply to the obtaining of a protective order from a court. Even if we accept as true that Angela abused her position as a court reporter in obtaining the protective order against Waldrip, that abuse allegedly was within the scope of her employment and related to the initiation of a judicial proceeding. Angela is immune from liability for abuse of process as alleged in Waldrip's complaint, pursuant to Indiana Code Section 34-13-3-3(6), and the trial court correctly dismissed that count against Angela.

Turning back to the claims of malicious prosecution and intentional infliction of emotional distress, Angela also generally alleged in her motion to dismiss that Waldrip's complaint did not set forth sufficient facts to support those claims. Indiana Trial Rule 8(A) requires only that a complaint set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." This rule does not require a complaint to recite in detail all of the facts upon which the claim is based. Trail v. Boys & Girls Clubs of Northwest Indiana, 845 N.E.2d 130, 141 (Ind. 2006). Rather, "a complaint is sufficient if it states any set of allegations, no matter how unartfully pleaded, upon which

21

the trial court could have granted relief." Id. A plaintiff need only provide a clean and concise statement that will give notice to defendants as to what has allegedly taken place and the theory or theories the plaintiff plans to pursue. Id.

Generally, a plaintiff must move prove the following four elements of a malicious prosecution claim: "(1) the defendant instituted or caused to be instituted a prosecution against the plaintiff; (2) the defendant acted with malice in doing so; (3) the prosecution was instituted without probable cause; and (4) the prosecution terminated in the plaintiff's favor." Butt v. McEvoy, 669 N.E.2d 1015, 1017 (Ind. Ct. App. 1996). Waldrip's complaint clearly states facts against Angela regarding all four elements: that she caused a prosecution or prosecutions to be initiated against Waldrip, without probable cause (by lying to police), with malice (i.e., to use the prosecutions against Waldrip in child custody proceedings), and that the prosecutions terminated in Waldrip's favor, by an acquittal and by dismissal of the remaining charges against him. The complaint adequately states a claim against Angela for malicious prosecution.

The elements of intentional infliction of emotional distress are that a defendant: (1) engages in extreme and outrageous conduct; (2) which intentionally or recklessly; (3) causes; (4) severe emotional distress to another. York v. Fredrick, 947 N.E.2d 969, 976 (Ind. Ct. App. 2011), trans. denied. Intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind. Lachenman v. Stice, 838 N.E.2d 451, 457 (Ind. Ct. App. 2005), trans. denied. Here, again, Waldrip alleges that Angela falsely accused him of

22

criminal conduct, leading to a lengthy period of incarceration before the criminal charges against him were resolved, and which led Waldrip to have reduced contact with his minor children and which charges Angela attempted to use as leverage in child custody proceedings. Waldrip further alleges that this conduct was "extreme and outrageous," that it was done intentionally, and that it caused him severe emotional distress. On a motion to dismiss, we believe Waldrip has sufficiently alleged the existence of intentional conduct by Angela that could be found to exceed all bounds of decent society and lead one to suffer severe emotional distress.

We also observe that our supreme court recognizes a qualified privilege for communications that private citizens make to police officers in reporting crime. See Williams v. Tharp, 914 N.E.2d 756, 763-64 (Ind. 2009). However, a statement may not be privileged if "'(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth.'" Id. (quoting Bals v. Verduzco, 600 N.E.2d 1353, 1356 (Ind. 1992)). Deliberate lies to police officers fall well outside this privilege, and "[a] citizen who reports wrongdoing to police knowing that the information is faulty fails to earn protection against a later civil action." Id. at 766. Waldrip alleges that Angela deliberately lied to police regarding criminal conduct by him, leading to malicious prosecution and intentional infliction of emotional distress. We conclude—again, in the absence of any argument by Angela to the contrary—that the complaint adequately states claims against Angela for malicious prosecution and

23

intentional infliction of emotional distress and that the trial court erred in dismissing those counts of the complaint against Angela. As required, we have taken the allegations of Waldrip's complaint as true; whether those allegations can or will be proven to be true remains to be seen.

### III. Claims Against Monroe County

Finally, we address Waldrip's claims against Monroe County. Those claims are based on three factors: Monroe County's purported relationship as Angela's employer and vicarious liability for her actions and liability in negligently hiring and retaining her; Waldrip's incarceration in the Monroe County Jail while awaiting trial; and his prosecution, which necessarily was conducted by the Monroe County Prosecutor's Office. Like Angela, Monroe County filed a Rule 12(B)(6) motion to dismiss, and the same standard of review applies to its arguments as it did to Angela's motion. Also, as with Bloomington and Angela, Monroe County's argument that Waldrip did not timely file an ITCA tort claims notice is not a basis for supporting dismissal of the complaint against Monroe County.

First, we note that Waldrip only generically named "Monroe County" as a defendant in this cause of action. By doing so, Waldrip necessarily was suing the Board of Commissioners of Monroe County. "The board of commissioners is the corporate entity representing the county through which it acts, and is in legal contemplation the county." Owen County Council v. State, 175 Ind. 610, 619, 95 N.E. 253, 256 (1911).

24

Generally, except in the case of consolidated city-counties, a county board of commissioners is the county executive. I.C. § 36-2-2-2.

First, with respect to Angela's employment as a reporter for the Monroe County Circuit Court, she necessarily was appointed to that position by a judge and likewise was subject to removal by the judge. See I.C. §§ 33-41-1-1, 33-41-1-4 (stating that official circuit court reporters are appointed by judge and subject to removal by judge). Although the courts in any given county are thought of as county courts, and although funded by county government, such courts are actually state courts. Allen County Council v. Allen Circuit Court, 38th Judicial Dist., 549 N.E.2d 364, 365 (Ind. 1990). "County courts in Indiana are exclusively units of the judicial branch of the state's constitutional system . . . ." Lake County Juvenile Court v. Swanson, 671 N.E.2d 429, 434 (Ind. Ct. App. 1996) (citing Ind. Const. art. 3, § 1), trans. denied. Therefore, the Monroe County Circuit Court is a state, not county, entity. See id. If certain criteria are met and if the Indiana Supreme Court gives it approval, a trial court may mandate county governments to pay court employees a salary demanded by the court. Allen County Council, 549 N.E.2d at 367. This is further indication that state trial court employees are not subject to control by the county executive. Given Angela's employment by the Monroe County Circuit Court, a state entity, at the discretion of the Circuit Court judge, she was not subject to hiring, supervision, or firing by Monroe County and its Board of Commissioners. All claims against Monroe County related to alleged vicarious liability for Angela's actions, or her

25

hiring and retention, were properly dismissed.[5]  See Delk v. Board of Comm'rs of Delaware County, 503 N.E.2d 436, 440 (Ind. Ct. App. 1987) (holding county commissioners could not be held vicariously liable for actions of county sheriff, which was a separate constitutional office not subject to control by the commissioners).

Next, we address the claims against Monroe County related to Waldrip's incarceration in the Monroe County Jail while awaiting trial.  The Monroe County Board of Commissioners is statutorily required to build and maintain a county jail.  See I.C. § 36-2-2-27(a).  However, this duty only extends to keeping the jail open and in good repair.  Weatherholt v. Spencer County, 639 N.E.2d 354, 356 (Ind. Ct. App. 1994).  Actual administration of the jail and treatment of prisoners falls to the county sheriff.  Id.  As with county trial courts, county sheriffs occupy a constitutionally-created office that is separate from the county executive.  See Delk, 503 N.E.2d at 440 (citing Ind. Const. art. 6, § 2).  "The law is well-settled that county commissioners do not have control over the acts of a sheriff."  Robins v. Harris, 740 N.E.2d 914, 919 (Ind. Ct. App. 2000), summarily aff'd in relevant part, 769 N.E.2d 586, 587 (Ind. 2002).  Waldrip makes no argument that the jail building was inadequately maintained; his claims are solely related to his alleged false arrest and imprisonment while awaiting trial, but claims of that type could only be stated against the Monroe County Sheriff if they could be stated at all.  See Delk, 503 N.E.2d at 440.

---

[5] We need not delve into whether the Monroe County Circuit Court could be sued and held liable for Angela's alleged actions.

26

Finally, it is equally evident that the Monroe County Board of Commissioners cannot be held liable in any way for the decision of the Monroe County Prosecutor's Office to file charges against Waldrip based on Angela's accusations. The Monroe County Prosecutor is a constitutionally-created office that is separate from the Monroe County Board of Commissioners. See Ind. Const. art. 7, § 16. Likewise, all criminal prosecutions are carried out in the name of the State of Indiana, not individual counties. See Ind. Const. art. 7, § 18. A county cannot be held liable for a prosecutor's actions in trying a case. See Mendenhall v. City of Indianapolis, 717 N.E.2d 1218, 1225-26 (Ind. Ct. App. 1999) (citing Mendenhall v. Goldsmith, 59 F.3d 685, 691 (7th Cir. 1995), cert. denied), trans. denied. This necessarily precludes any liability of Monroe County related to the charging decisions of the Monroe County Prosecutor's Office regarding Waldrip.

In sum, Waldrip's complaint fails to state any claims that could be properly presented against "Monroe County," which without further differentiation or clarification by Waldrip includes only the Monroe County Board of Commissioners. The trial court properly dismissed all of Waldrip's claims against Monroe County.

**Conclusion**

We affirm the dismissal of the complaint against Monroe County in its entirety. We also affirm the dismissal of those counts of the complaint against Angela that raised claims of false imprisonment, abuse of process, civil perjury, tortious interference with child custody and/or parenting time, and defamation. Waldrip has demonstrated prima facie error in dismissal of the counts against Angela for malicious prosecution and

27

intentional infliction of emotional distress; we reverse the dismissal of those counts and remand for further proceedings on them. We also reverse the granting of Bloomington's motion for judgment on the pleadings and remand for further proceedings on all of Waldrip's claims against Bloomington.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and MATHIAS, J., concur.