## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Jonathan R. Deenik
Deenik Law, LLC
Greenwood, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

K.W.,

*Appellant-Respondent,*

v.

C.W.,

*Appellee-Petitioner.*

February 26, 2018

Court of Appeals Case No.
41A01-1708-DR-1833

Appeal from the Johnson Superior Court

The Honorable Eugene Stewart, Senior Judge

Trial Court Cause No.
41D02-1103-DR-175

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent K.W. ("Father") and Appellee-Petitioner C.W. ("Mother") are the parents of K.W., Jr. ("the Child"). After the parties' divorce, Mother was granted custody of the Child and Father was awarded parenting time pursuant to the Indiana Parenting Time Guidelines ("IPTG"). On October 13, 2016, Mother filed a verified notice of intent to relocate to Belton, Missouri, with the Child to which Father objected. Following a two-day hearing on the matter, the trial court issued an order in which it granted Mother permission to relocate to Missouri with the Child. Father appeals from the trial court's order. Finding no error in the trial court's order, we affirm.

# Facts and Procedural History

[2] Mother and Father were previously married and are the parents of the Child. The Child was born on January 26, 2006. The parties' marriage was dissolved by a divorce decree dated January 31, 2007. Following the parties' divorce, Mother was granted primary physical custody of the Child and Father was granted parenting time pursuant to the IPTG.

[3] The parties continued to reside in their respective residences in Franklin, Indiana, following their divorce. In April of 2012, Mother sought and received

permission to relocate to Milton, Kentucky, with the Child.[1]  Mother and the Child returned to Franklin in May of 2014, after Mother's employer added Indiana to her sales territory.  At some point, Father remarried and, in February of 2016, moved to Noblesville.

On October 13, 2016, Mother filed a verified notice of intent to relocate with the Child to Belton, Missouri.[2]  In this notice, Mother indicated that she wished to relocate "because she is seeking promotion and greater financial opportunity with her employer …as well as following God's call to join the Gospel Tabernacle Church … where she and [the Child] can thrive attending a good church and associating with good people."  Appellant's App. Vol. II, p. 14.  Mother proposed "a revised schedule of parenting time to be that which is agreed upon by the parties, subject to the [IPTG] where [d]istance is a [f]actor."  Appellant's App. Vol. II, p. 14.  On December 2, 2016, Father filed a verified objection to the proposed relocation of the Child.

The trial court conducted a two-day hearing on the matter on May 22, 2017 and June 26, 2017.  On August 1, 2017, the trial court issued a detailed order allowing Mother to relocate to Missouri with the Child.  The trial court

---

[1] Father did not object to the relocation to Kentucky and continued to exercise parenting time with the Child while the Child resided in Kentucky.

[2] Mother acknowledged before the trial court that since the parties' divorce, she has sought permission to relocate on a number of occasions.  Mother indicated that these attempts to relocate were made for the purpose of securing better employment opportunities and that these opportunities would have enabled her to better provide for the Child.  The record reveals that one such request was denied, one was withdrawn by Mother, and one was for the aforementioned move to Kentucky.

specifically found that the evidence proved that the proposed relocation was requested in good faith for a legitimate reason and that the relocation was in the Child's best interest. Father now appeals.

# Discussion and Decision

[6]     Initially, we note that Mother has not filed an Appellee's brief in this matter.

> "When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf." *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). "Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Id.* (citing *Gibson v. City of Indpls.*, 242 Ind. 447, 448, 179 N.E.2d 291, 292 (1962)). "Prima facie error in this context is defined as, 'at first sight, on first appearance, or on the face of it.'" *Id.* (citing *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999)). "Where an appellant is unable to meet this burden, we will affirm." *Id.*

*Fifth Third Bank v. PNC Bank*, 885 N.E.2d 52, 54 (Ind. Ct. App. 2008).

# I. Standard of Review

[7]     The trial court entered findings of fact and conclusions of law pursuant to Father's request under Indiana Trial Rule 52(A).

> Our standard of review is well-settled:

>> [W]e must first determine whether the record supports the factual findings, and then whether the findings support the judgment. On appeal, we will not set aside the findings or judgment unless they are

clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. We therefore consider only the evidence favorable to the judgment and the reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. A judgment is clearly erroneous when there is no evidence to support the findings, the findings do not support the judgment, or the trial court applies the wrong legal standard to properly found facts.

*M.S. v. C.S.*, 938 N.E.2d 278, 281–82 (Ind.Ct.App.2010) (quotations and citations omitted)….

"In addition to the standard of review under Trial Rule 52, our supreme court has expressed a 'preference for granting latitude and deference to our trial judges in family law matters.'" *In re Paternity of Ba.S.*, 911 N.E.2d 1252, 1254 (Ind. Ct. App. 2009) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). Our supreme court has recently re-emphasized this principle, stating that we afford such deference because of trial judges' "unique, direct interactions with the parties face-to-face." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Id.*; *see also Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). Therefore, we "will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. The concern for finality in custody matters reinforces this doctrine." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257–58 (Ind. 2008).

*T.L. v. J.L.*, 950 N.E.2d 779, 783–84 (Ind. Ct. App. 2011).

## II.  Legal Standard for Relocation

[8] Under the relocation statutes, a relocating parent must file a notice of intent to relocate and send a copy of the notice to any nonrelocating parent.  Ind. Code § 31-17-2.2-1(a).  If a nonrelocating parent objects to the relocation of the child, the parent must, not later than sixty days after the receipt of notice from the relocating parent, file a motion in opposition to the motion to relocate.  Ind. Code § 31-17-2.2-5(a).

[9] Once a nonrelocating parent has filed a motion in opposition to the relocation of the child, "[o]n the request of either party, the court shall hold a full evidentiary hearing to grant or deny a relocation motion[.]"  Ind. Code § 31-17-2.2-5(b).  During this hearing, "[t]he relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason."  Ind. Code § 31-17-2.2-5(c).  "If the relocating individual meets the burden of proof under [Ind. Code § 31-17-2.2-5(c)], the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child."  Ind. Code § 31-17-2.2-5(d).

[10] In considering the proposed relocation, the trial court shall take into account the following factors:

> (1)  The distance involved in the proposed change of residence.
>
> (2)  The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
>
> (3)  The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting

time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

    (A) relocating individual for seeking relocation; and
    (B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Ind. Code § 31-17-2.2-1(b).

# III. Analysis

In challenging the trial court's order allowing Mother to relocate with the Child, Father contends that the trial court erred in finding that Mother's proposed relocation was being made for a legitimate purpose. Father alternatively contends that even if the proposed relocation was being made for a legitimate purpose, the trial court erred in finding that the proposed relocation was in the Child's best interests.

## A. Legitimate Purpose

During the hearing, Mother indicated that her relocation to Belton, Missouri, would afford her potential opportunities for advancement with her employer that are not available to her in Indiana. At the time of the evidentiary hearing,

Mother had been employed by Forberg Scientific, Inc. ("Forberg") for approximately five years. Mother worked in outside sales, covering the State of Indiana. In relocating to Missouri, Mother would initially hold a similar sales position with Forberg as she did in Indiana. Mother, however, would have opportunities for advancement in Missouri and such opportunities are not available to her in Indiana.

[13] Mother indicated that she is "stagnant in her job" in Indiana and does not have the potential for a promotion unless she relocates. Tr. Vol. II, p. 21. Mother described multiple opportunities for advancement that would likely be available to her with the next two or three years if she were to relocate to Missouri. She also indicated that there were opportunities for advancement with Forberg's sister company in Missouri, although she would rather continue her employment with Forberg. Mother wishes to stay with and advance within Forberg because the company provides her the flexibility to set her schedule in a manner that allows her to best care for the Child.

[14] The trial court considered the evidence relating to Mother's desire to advance her career so to better provide financial flexibility for herself and the Child. The trial court concluded that Mother's proposed relocation is made in good faith and for a legitimate purpose. In challenging the trial court's conclusion, Father does not dispute that Mother has employment opportunities available to her in Missouri that are not available in Indiana. Father argues, however, that a potential employment opportunity is not a legitimate reason for Mother to relocate because Mother does not have a guaranteed offer of employment.

Thus, Father asserts that Mother's proposed relocation "is premised on pure speculation." Appellant's Br. p. 14.

[15] Contrary to Father's assertion, the record reveals that Mother will have employment following her relocation to Missouri. The only speculation is to whether and how quickly Mother will advance in this employment.

[16] In addition, Father points to no case law indicating that an opportunity for career advancement is not a legitimate reason for a proposed relocation, and relevant authority suggests otherwise. In *T.L.*, the relocating parent indicated that she wanted to relocate to Tennessee because she desired to be closer to family and to take advantage of educational opportunities and career advancement opportunities available to her in Tennessee. 950 N.E.2d at 787. The relocating parent indicated that similar opportunities were not available to her in Indiana for financial reasons. *Id*. at 782, 787. It was clear from the facts of *T.L.* that the relocating parent had not obtained new employment but would first have to take advantage of the educational opportunities available to her. *Id*. at 782. Nevertheless, we concluded that the reasons provided by the relocating parent were legitimate and made in good faith. *Id*. at 787.

[17] In reaching this conclusion, we noted that "it is common in our society that people move to live near family members, for financial reasons, or to obtain or maintain employment. We infer that these and similar reasons … are what the legislature intended in requiring that relocation be for legitimate and good faith reasons." *Id*. at 787–88 (quotation marks omitted). Here, Mother's job

prospects are more certain than those discussed in *T.L.* In this case, Mother will have employment when she relocates and, upon relocation, will be in the position to take advantage of opportunities for advancement and higher compensation that are available to her in Missouri, but not Indiana. We conclude that this reason was a legitimate reason for relocating.

## B. Best Interests of the Child

[18] With respect to the Child's best interests, Mother indicated that she believes that the proposed relocation would "enrich [her and the Child's] lifestyles." Tr. Vol. II, p. 21. Mother noted that current conflict in her relationship with her parents is not healthy for the Child. She also noted that she and the Child had a nice lifestyle while they lived in Kentucky and were both "really happy." Tr. Vol. II, p. 21. She believes the same would be true in Missouri.

[19] Mother and the Child already have friends and acquaintances in Missouri. These friends and acquaintances include individuals who attend the church that Mother wishes to attend and former and current co-workers of Mother and their families. The Child enjoys his and Mother's visits to Missouri and has "fit right in." Tr. Vol. II, p. 24. Mother indicated that the Child lights "up when he's there" and stated that she "want[s] that for him." Tr. Vol. II, p. 24.

[20] While Father claims that the Child is well-adjusted and has made a lot of friends in Franklin, Father could not name any of these friends and admitted that he and the Child "don't talk about specific individuals." Tr. Vol. II, p. 156. Nothing in the record indicates that the Child would not also adjust well to life

in Missouri and the record indicates that the Child, through monthly visits to the area, has already begun to make friends there.

[21] Historically, Father has not "exercise[d] full parenting time." Tr. Vol. II, p. 11. This is true both while the parties all lived in Franklin and since Father has moved to Noblesville. Father sees the Child "on occasion" but never on a consistent basis. Tr. Vol. II, p. 11. Mother indicated that she "never knew when [Father] was going to see [the Child]." Tr. Vol. II, p. 11. In addition, since Mother and the Child moved back to Franklin and Father relocated to Noblesville, Father exercises parenting time "very rarely." Tr. Vol. II, p. 13. Mother noted that the quantity of Father's parenting time increased when she and the Child lived in Kentucky. She further indicated that she hoped that the proposed relocation would result in an increase in Father's parenting time as it would allow Father to exercise parenting time pursuant to the IPTG where distance is a factor.

[22] For his part, Father asserted that his employment as a manager of a Walmart store limits his ability to exercise regular parenting time. However, while it is undisputed that Father's employment limits the days he has available to exercise parenting time, the record reveals that Father does not request to see the Child on his days off. He has not displayed a desire or willingness to put forth the effort to spend time with the Child in Franklin, to visit the Child's school, or to attend the Child's activities.

[23] Some of Mother's friends testified during the evidentiary hearing about Mother's relationship with the Child. These friends have observed that Mother and the Child are "very close" and have "a very loving and affectionate bond." Tr. Vol. II, p. 215. Mother and the Child are "always doing something activity wise" together. Tr. Vol. II, p. 215. One friend specifically described Mother as "a good parent, very stable." Tr. Vol. II, p. 221.

[24] Further, while Mother and the Child had previously maintained a close relationship with her family, as of the date of the evidentiary hearing, such was no longer the case. Mother testified that her prior decision to leave her parents' church created a problem with her relationship with her parents, specifically, her mother. Mother left her parents' church because there were no children for the Child to interact with and because she did not agree with some of the church's teachings. Mother testified that since leaving her parents' church, she has "been told that [she and her parents] don't have a relationship because [she does not] go to their church anymore." Tr. Vol. II, p. 11. In further testifying about her deteriorating relationship with her parents, Mother indicated that "all [she] feel[s] there is [is] judgment and condemnation and [that she is] never good enough." Tr. Vol. II, p. 244. Given the evidence outlining Mother's deteriorating relationship with her parents, the trial court reasonably inferred that the nature of Child's relationship with his grandparents would be impacted regardless of whether Mother and the Child relocated to Missouri.

[25] Father does not dispute that the Child and Mother have a close bond and that Mother serves as a stabilizing force in the Child's life. Father argues, however,

that relocation is not in the Child's best interests because it will make it more difficult for Father to maintain a close relationship with the Child and for the Child to maintain a close relationship with other family members living in Indiana, mainly Mother's parents. The record reveals that Father's actions while the Child resided in Indiana negatively impacted Father's ability to maintain a close relationship with the Child. The trial court also specifically found that the parties' respective financial situations are such that it would not be a financial burden to transport the Child between Missouri and Indiana for visitation with Father either by vehicle or airplane. Further, as we discussed in the paragraph above, the record also reveals that maternal grandparents' access to and relationship with the Child will be diminished regardless of whether Mother and the Child reside in Missouri or Indiana.

[26] Father also argues that while he may be entitled to more parenting time if Mother and the Child were to relocate, this time would not be as consistent as his parenting time if the Child were to remain in Indiana. The evidence indicates, however, that Father was currently inconsistent with the exercise of his parenting time with the Child. Father did not present any evidence suggesting that the inconsistent nature of his exercise of parenting time with the Child would change if Mother and the Child were to remain in Indiana.

[27] Our review of the record reveals that Father has failed to take full advantage of his parenting time opportunities while living in close proximity with the Child. The evidence further demonstrates that the Child and Mother have a strong bond. It seems that so long as the Child resides with Mother, the Child appears

able to smoothly transition to different living environments. Mother and the Child have already begun to build a sense of community in Missouri. One may reasonably infer from the record that this sense of community would increase following their permanent relocation to Missouri. Mother also has opportunities for career advancement in Missouri. These opportunities would provide her with a greater sense of financial freedom and enable her to better provide for the Child. Thus, in light of our preference for granting latitude and deference to our trial judges in family law matters, we conclude that the trial court did not err in finding that relocation was in the Child's best interests.

[28] The judgment of the trial court is affirmed.

Robb, J., and Crone, J., concur.